W. R. HIGHFILL, Respondent, v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, March 3, 1902.

1. **Personal Injury:** EVIDENCE: POSSIBILITY OF INJURY: DUTY OF COURT. On the evidence in this case the court was not authorized to declare that the personal injury complained of could not have resulted under the circumstances, however probable it might be.

2. **Witnesses:** PRIVILEGED COMMUNICATION: WAIVER. Where a patient goes on the stand and testifies as to what his physician found and said, he thereby waives the privilege under the statute and the physician may testify.

Appeal from Jackson Circuit Court.—*Hon. Jno. W. Henry,*
Judge.

REVERSED AND REMANDED.

*Elijah Robinson* and *Harris Robinson* for appellant.

(1) The verdict is so opposed to the great preponderance
of the evidence, and so against the manifest truth of the mat-
ter, as to make it perfectly apparent that it was the result of
sympathy for the plaintiff and prejudice against the defendant,
and not the result of a reasonable and fair consideration of the
evidence in the case, and, therefore, the judgment of the trial
court should be reversed. Friesz v. Fallon, 24 Mo. App. 439;
Janis v. Roentgen, 52 Mo. App. 114; Hays v. Merkle, 78 Mo.
App. 389.; Steube v. Foundry Co., 85 Mo. App. 644; Whit-
sett v. Ransom, 79 Mo. 258; Spohn v. Railroad, 87 Mo. 74;
Garrett v. Greenwell, 92 Mo. 120; Cohn v. Kansas City, 108
Mo. 387; State v. Shackelford, 148 Mo. 495; Kelsay v. Rail-
road, 129 Mo. 362; Lane v. Railroad, 132 Mo. 27. (2)
Moreover, the physical facts, proven by the uncontradicted
evidence, show conclusively that his story is not true. (3)
The court committed error in refusing to permit defendant to
examine plaintiff as to what occurred between him and Dr.
Wood. Weinstein v. Reid, 25 Mo. App. 41, and authorities
there cited. (4) The court committed error in sustaining
plaintiff's objections to questions asked by Dr. Wood. Bowles
v. Kansas City, 51 Mo. App. 421.

*Harkless, O'Grady & Crysler* for respondent.

(1) The appellant seems to make a point in his brief that
there was some error of the court in refusing to permit the de-
fendant to examine the plaintiff as to what occurred between
him and Dr. Wood. We fail to find any such situation in the

record. (2) All of this testimony which the defendant assumed to show by his physician, with reference to what took place or what was said, or as to what plaintiff's condition was after he had been employed as his physician and treating him, was excluded by the court and this solely, and this ruling was unquestionably right. James v. Kansas City, 85 Mo. App. 20. (3) But the appellant in this case asked this court to review the findings of the jury on the theory that the preponderance of the evidence is so great as to raise a presumption of passion or prejudice. This position can not certainly be maintained and the case does not present a state of facts where such question is even suggested.

BROADDUS, J.—Plaintiff claims to have been injured by being struck by a swinging door, through the negligence of defendant's porter, while a passenger en route on defendant's car from St. Louis to Independence, Missouri, during the night of February 4, 1900. His home, just previous to said date, was in Stoddard county, Missouri, where his wife died leaving him a child only a few months old. En route, the child died. He asked the defendant's porter if there was any place where he could lay it, whereupon the porter took him to the smoking room at the end of the chair car, where there were seats in the shape of benches, and told him he could lay it on one of them, which he did.

It was shown that there was a glass door between this smoking room and the other part of the car that swung both ways. There was a water tank in the smoking department on the opposite side from the seats. The plaintiff's evidence was, that he went to the water tank and got a drink, and had turned to go back and sit down, when the porter pushed said swinging door open, which in opening hit him in the back and knocked him over on the seats. He says he stated to the porter, "make your report to the company for I am hurt," and that the porter said: "Excuse me, Mister." He claims that his hip was

dislocated by the blow so received. He recovered judgment for $500, from which defendant appealed.

Defendant contends that the evidence does not sustain the verdict, and that it is the result of sympathy. Dr. Dodson testified that plaintiff's hip was dislocated and that he replaced it. Dr. Shaw's evidence also tended to show that there was such dislocation. According to his own testimony, the plaintiff got off the train at Independence, with his valise and child in his arms without assistance, and walked with his father to his home, a distance of several blocks, a part of the way carrying both the dead child and the valise, but that in so doing he rested his hand on his father's shoulder. Dr. Wood and other physicians say that he could not have done so if his hip had been dislocated. Dr. Dodson thinks he could. He was on the street afterwards on the same day and talked with Dr. Wood, but did not mention his injury, and the doctor says he saw him walk but did not notice that he was lame. Plaintiff's father, however, testified that he was lame, and his evidence in that respect is strongly corroborative of the plaintiff's. J. M. Whitwell also testified that he saw him when he came from the station with his father, and that he was limping and holding to his father's shoulder. The evidence was sufficient to prove that plaintiff was at least lame from some cause or other, but that his hip was dislocated, the proof is not so convincing.

The theory of the defendant's experts, that the plaintiff's hip could have been dislocated under the circumstances as detailed was impossible, is overthrown if we are to believe Doctor Dodson, who says it was, and that he actually replaced it. It looks exceedingly improbable that he received the injury in the manner he says he did, taking into account the anatomical structure of the hip joint. It must have required great force to have accomplished such a result, applied from the rear of his body and laterally. And we can not see how it could have so happened without also having produced a fracture of which

there is no evidence. But our theory will not hold good, any more than that of the medical experts, as against an actual result, for we know that there are happenings exceedingly strange and apparently against all our preconceived ideas of their possibility. It is therefore not one of those cases in which a court would be authorized to hold that the injury could not have resulted under the circumstances, for the reason that it was against common experience and impossible from the very nature of things, however improbable.

It is contended that the court committed error in the rejection of competent evidence offered upon the part of the defendant. While the plaintiff was testifying in chief, he stated that Doctor Wood treated him awhile and that he made an examination of him; and found a bruise on the back (indicating the spot), and that he treated him until about the last of March, but that he did not get any better under his treatment. The defendant called Doctor Wood as a witness and, among other questions, propounded the following, viz.:

"Q. I will get you to state what was the matter with him?" On objection by the plaintiff's counsel the court refused to permit him to answer the question. It is claimed by defendant that the evidence did not show that he was the plaintiff's physician and he was, therefore, a competent witness. We do not think he was a competent witness for the reason assigned, but under a recent decision of this court he was. We refer to Webb v. Railroad, 89 Mo. App. 604, wherein it was held that as the plaintiff has testified as to her treatment by certain physicians, and detailed the manner of her treatment, and what the physicians had treated her for, that they became competent witnesses by reason of the fact of the plaintiff having thereby removed the shield of the statute. In commenting on the facts, the court held that the plaintiff "was allowed to fortify her case in this way, by the silent testimony of those whose acts and words (indirectly) she invoked, but whose mouths she closed by the shield of the statute," and

the facts in this case are somewhat similar. The plaintiff, in order to fortify his case, stated, as we have seen, that Dr. Wood examined him and found a bruise on his back, in other words, told him there was a bruise on his back. This was no insignificant fact going to support plaintiff's claim that he was injured as he alleged, and in so testifying he was telling the jury what his physician found indicating that he received a blow on the back in the region of the injury.

The statute was enacted to hide, as with a veil, the confidences of the sick room, from all, but when the party comes into court and tells in his own behalf that the physician stripped him of his clothing and exposed his nakedness and told what the doctor found upon him and where, he waived the secrecy imposed by the statute. It is true he does not state what he said to the physician, but he tells what the physician said to him. It is reasonable to suppose that he told the doctor how he was injured, because the doctor caused him to strip himself of his clothing, and found the bruised place on his body in the region it ought to have been in order to correspond with plaintiff's claim of where he was injured. The case clearly falls within the rule of the case cited.

As this was a somewhat important ruling of the lower court, where the facts were not as satisfactory as they should have been, to support the verdict of the jury, we believe the case ought to be reversed for the reason that it was error to refuse to allow Doctor Wood to answer said question.

The cause is reversed and remanded. All concur.