S. L. CANTLEY, FINANCE COMMISSIONER ET AL., APPELLANTS, V. AMERICAN SURETY COMPANY, RESPONDENT.*—38 S. W. (2d) 739.

Kansas City Court of Appeals.    April 6, 1931.

*Richard H. Musser* and *M. D. Aber* for appellant.

*W. E. Owen & Son* and *W. E. Suddath* for respondent.

BLAND, J.—This is a suit upon a bond, executed by the defendant, Reynolds, as principal and the defendant, American Surety Company,

as surety. The case was tried before the court without the aid of a jury, resulting in a judgment in favor of defendants. Plaintiff filed a motion for judgment *non obstante veredicto,* which motion was overruled. They then filed a motion for a new trial which was likewise overruled. Plaintiffs have appealed.

The facts show that at the time of the alleged breach of the bond, and until the time of the taking over of plaintiff, Farmers Bank of Leeton, by the Commissioner of Finance on October 8, 1925, defendant Reynolds was cashier of plaintiff bank; that the bond sued upon was in full force and effect at the time of the alleged breaches thereof; that the bond indemnified the bank against loss "by reason of any act or acts of larceny, embezzlement, fraud, dishonesty, forgery, theft, wrongful abstraction, or willful misapplication by" said Reynolds.

The theory upon which recovery is sought upon the bond if founded upon the acts of Reynolds in making loans to one S. L. Miller, a director of the bank, in amounts in excess of ten per cent of the capital and surplus of the bank, without the consent of a majority of its board of directors first having been obtained at a directors' meeting and made a matter of record before the loans were made, in violation of clause 8, section 11740, Revised Statutes 1919.

The undisputed testimony shows that the bank examiner had made complaint to Reynolds, the cashier, that Miller's loans were excessive and must be reduced and suggested that Reynolds "get some other member of the family (Miller's) on" the notes to take up the excessive indebtedness, saying that "in other places they have the wives sign on excessive loans;" that on March 2, 1920, after the conversation between Reynolds and the bank examiner, Miller signed his wife's name to a note in the sum of $5,000 in favor of the bank; that upon January 6, 1922, a similar situation arose and Miller on that day signed his wife's name to a note in the sum of $1200 in favor of the bank; that at the time the bank failed the $5,000 note had been reduced by payments made by Miller to the sum of $3,000, so at that time, upon the indebtedness created in favor of the bank by these two transactions, the sum of $4,200 remained unpaid.

The undisputed testimony further shows that Miller signed these notes without the knowledge or consent of his wife; that she knew nothing of the signing of the first or $5,000 note until about six months thereafter, when a renewal notice was received by her from the bank; that at that time Miller explained the matter to her and she made no objection to what he had done but said to him "that it was all right, but I wanted him to get rid of it as soon as he could." She knew of his making the various renewals of this note. When she received notice of the execution of the $1200 note in her name she did not give Miller any directions in reference to same, but he testified that she read this notice and made no objection to

it; that she permitted him to transact her business affairs; that she never made any objection to his making various renewals of these notes.

The undisputed evidence further shows that Miller's account with the bank was credited with the amounts of these notes upon the days they were executed and that the amounts of the credits, plus his other indebtedness to the bank, at the time of their receipt, in each instance, was much greater than ten per cent of the capital and surplus of the bank.

The facts further show that suit was brought by the plaintiff against Mrs. Miller upon the balance due upon the two notes in controversy; that she made no defense to the action and judgment was rendered against her; that execution upon the judgment was returned *nulla bona;* that Miller had gone through bankruptcy and had been discharged from his liabilities.

There is no denial that Miller signed his wife's name without her consent and received the money upon the notes, but defendants sought to prove at the trial that the bank sustained no pecuniary loss as a result of these transactions, first, by introducing testimony which defendants assert tends to show that these two loans were made by Miller for the purpose of reducing his indebtedness to the bank, and, second, by introducing testimony which defendants claim tends to show that Miller was agent for his wife in signing the notes and the renewals thereof and that she ratified his action in regard thereto, and that at the time of the execution of the notes she was the owner of property in excess of the loans out of which property the bank could have realized their amount. It is claimed, in effect, that the loans, having been ratified by Mrs. Miller, were her indebtedness and not Miller's; that Miller's indebtedness to the bank was not increased by the transactions and it suffered no loss thereby.

There was other evidence which defendants now contend, tends to show that, in any event, there was no breach of the bond for the reason that there was no concealment or bad faith on the part of Reynolds, and therefore, no breach of the bond. In this connection it is pointed out that Reynolds merely followed the advice of the bank examiner in having Miller sign his wife's name to the notes, and that Reynolds' acts in making the loans were later ratified by the board of directors at their regular meetings. The evidence on the question of approval of the loans by the board of directors tends to show that the loan of $5,000, made on March 2, 1920, was approved by the board on March 5 of that year and the $1200 loan of January 6, 1922, was approved shortly after it was made.

The evidence fails to show, at least definitely, as to what was done with the money that Miller obtained upon the two notes in controversy. The ledger sheets of the bank show the condition of

his account from day to day; that when the loan of March 2, 1920, was made Miller might have had a slight over-draft; that between that time and March 6 he drew out small sums and, on the latter day he drew out the sum of $4,000; that on January 2, 1922, there was a balance in his account in the sum of $98.49; that on January 3, there was deposited $1200 to his account; that on January 4 there were withdrawals amounting to $31.65 and that on January 6 a check was cashed in the sum of $1165.86. The records of the bank show that on February 6, 1920 he owed the bank $6500 and that on April 2 of the same year, he owed it $7500. There is no showing of the amount of his indebtedness in the interim. In October, 1921, he was indebted to the bank in the sum of $6362.58 and on March 3, 1922, he owed $6210. There is nothing to show his indebtedness in the interim.

The testimony of Miller, who was a witness for the plaintiffs, was somewhat conflicting as to what the $5,000 loan went for but he finally stated that he did not remember. He did state, however, that the $1200 loan went to reduce his indebtedness.

The witness, John Stacey, assistant cashier of the bank, testifying for the plaintiffs, stated that, in his opinion, the $4,000 check issued by Miller, on March 6, 1920, was to take up an existing note of Miller's; that to the best of his knowledge, the check for $1165.86, dated January 6, 1922, was applied on Miller's indebtedness to the bank, but that it was impossible to tell definitely whether these sums were so applied without the daily balance sheets. The record shows that a notice to produce these sheets was served upon plaintiffs by defendants prior to the trial but that plaintiffs failed to produce them for the reason that they did not come into the possession of the deputy commissioner of finance at the time the affairs of the bank were taken over and he did not know where they were. Stacey further testified that the fact that the records showed that Miller was indebted to the bank in a larger sum on April 2, 1920, after the execution of the $5,000 note and the issuance of the $4,000 check and that after the $1200 loan, Miller was indebted to the bank in substantially the same amount that he was before, did not change his opinion of the witness in reference to the application of the proceeds of these loans to Miller's indebtedness.

Reynolds, testifying for the defendants, stated that the proceeds of the two notes in controversy went to the reduction of Miller's indebtedness. However, upon cross-examination, he was unable to explain how it could be possible that the $5,000 loan went to reduce Miller's indebtedness to the bank when the latter's indebtedness in April was in excess of the amount he owed before the making of the loan.

Plaintiff's claim that the court erred in rendering judgment against them and in this connection urge that there is no substantial

evidence to sustain the finding of the court; that while some of the witnesses said that it was their opinion that the two notes in controversy were given to raise money to reduce Miller's indebtedness, they did not state that the money was raised for the purpose of reducing his indebtedness to the bank; that, at any rate, the opinions of these witnesses should not be permitted to weigh against the records of the bank showing that after each of the two loans in controversy was made the amount of Miller's indebtedness to the bank was practically the same or greater than before; that this fact conclusively shows that the money raised upon the notes did not go to reduce his indebtedness to the bank and its assets were necessarily depleted by the amounts of the notes and a pecuniary loss was sustained.

The record shows that at the conclusion of the testimony no specific finding of facts or declaration of law was requested but plaintiffs asked the court to make a finding of facts and conclusions of law under section 952, Revised Statutes 1929. In compliance with this request the court found, under the heading of "Finding of Facts," that there was no breach of the bond sued upon for the reason that under all of the testimony there was no pecuniary loss to the bank by reason of any of the acts complained of in plaintiff's petition. At the same time the court, under the heading of "Declaration of Law" declared as follows:

"The court declares the law to be that unless it is shown there was some pecuniary loss to the Farmers Bank of Leeton there was no breach of the bond sued upon in this case."

Plaintiffs saved their exceptions, generally, to the finding of facts and conclusion of law. In their motion for a new trial plaintiffs attack the finding of facts on the ground that the testimony of the witnesses to the effect that the loans made to Miller "did not operate to increase the indebtedness to the bank" and should not outweigh the records of the bank showing that, after each of the loans in question was made, the indebtedness of Miller to the bank was practically as great or greater than before. It is then stated that these records which the motion refers to as "physical facts," "showed conclusively that the bank's assets were necessarily depleted by the amounts thereof." In other words in the motion for a new trial the finding of facts was attacked upon the ground that there was no substantial evidence to support the finding.

We think that, under the circumstances, plaintiffs are not in a position, now, to contend there was no substantial evidence to sustain the finding of the court. By requesting a finding of facts, under the statute, plaintiffs conceded that the case was a proper one for that procedure, in other words, that the facts were in dispute and called for the making of a finding of facts by the court. Plaintiffs are bound in this court on the same theory that they pursued

in the lower court. [Steel v. Johnson, 96 Mo. App. 147, 156.] We have examined the case In re Lankford's Estate, 272 Mo. 1, and like cases cited by plaintiffs but do not find that in those cases there was any request for a finding of facts under the statute.

However, it is contended by the plaintiffs that the court failed to make such finding of facts as is contemplated by the statute; that the so-called finding of facts made by the court is merely a conclusion of the court and cannot be considered in any sense as a finding of facts under the issues. The finding of facts, although in the nature of a conclusion of facts and, therefore, not to be approved as a proper finding of facts under the statute, section 952, Revised Statutes 1929, is sufficient to support the judgment. [Land Co. v. Bretz, 125 Mo. 418; Steele v. Johnson, supra.] So far as the record shows this contention was first thought of by plaintiffs in this court. No such question was raised in the lower court and, therefore, cannot be raised here. While the motion for a new trial attacks the finding of facts on the ground that there is no substantial evidence to support the finding, it does not attack it on the ground now made. For this reason, if no other, the matter cannot now be considered. [Redmond v. Railroad, 104 Mo. App. 651, 656, 657; Advertising Co. v. Castleman, 165 Mo. App. 575, 588-595, 177 S. W. 597, 600; State ex rel. v. Lusk, 93 Mo. App. 680; Loewen v. Forsee, 137 Mo. 29, 38.] There is nothing in the case of Nichols v. Carter, 49 Mo. App. 401, 404, and like cases cited by the plaintiffs which can be construed to be contrary to this holding.

It is contended by the plaintiffs that the court erred in permitting the witness, Miller, to testify to communications between himself and wife relative to what occurred when she found out that he had signed her name to the notes in question without her knowledge or consent, on the ground that these were privileged communications. No authority is cited on the question. However, if they were privileged communications the privilege was personal in its nature and was waived by Mrs. Miller who took the witness stand on the part of the defendants and, without objection on her part or any one else, testified to substantially the same statements as those related on the stand by her husband. Therefore, plaintiff, cannot convict the trial court of reversible error in relation to the matter. [Wibracht v. Annan, 89 Mo. App. 363; Webb v. St. Ry. Co., 89 Mo. App. 604; Pinson v. Campbell, 124 Mo. App. 260; Highfill v. Mo. Pac. Ry. Co., 93 Mo. App. 219; Modern Woodmen v. Angle, 127 Mo. App. 94; Holloway v. K. C., 184 Mo. 19; 40 Cyc., pp. 2397-2402; 28 R. C. L., p. 531; Hampton v. State of Oklahoma, 40 L. R. A. (N. S.) 43, note).] No question is raised relative to the incompetency of this testimony on any other ground.

It is contended that the court erred in permitting testimony relative to the conversation between the bank examiner and Reynolds

wherein the former told Reynolds, in effect, to have Miller's wife sign the notes. It is claimed that this was hearsay testimony. No doubt the court permitted the introduction of this testimony on the question of Reynolds' good faith. Whether or not there was any such issue in the case or whether the testimony bore upon such an issue, if any, we need not say, for the reason that while this testimony might have been error had the cause been tried before a jury, ordinarily the admission of incompetent testimony is not reversible error in a trial before the court. [Patten v. Thomas, 212 Mo. App. 367, 380; Cornice & Roofing Co. v. Trust Co., 146 Mo. App. 36, 56, 57.] There is nothing in the finding of facts or declaration of law indicating that the court considered this testimony in arriving at the result and we cannot, under the circumstances, regard the admission of that testimony as reversible error.

As it is undisputed that, if the bank suffered no pecuniary loss by the making of the loans in controversy, plaintiffs cannot recover, we must hold that the general finding of facts supports the judgment and it should be affirmed. [Steel v. Johnson, supra; Nichols v. Carter, supra, l. c. 405.] It is so ordered. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.