**In the Estate of John H. ENGLISH, Deceased.**

**Joe ENGLISH, Appellant,**

v.

**Roberta STAMPER and Roger English, Respondents.**

**No. WD 36070.**

Missouri Court of Appeals, Western District.

May 14, 1985.

Walter D. McQuie, Jr., Montgomery City, for appellant.

Gary L. Stamper, Bear, Hines & Thomas, Columbia, for respondent Roberta Stamper.

Joe D. Holt, Holt, Krumm, Mays & Shryock, Fulton, for respondent Roger English.

Before SOMERVILLE, P.J., and KENNEDY and LOWENSTEIN, JJ.

SOMERVILLE, Presiding Judge.

This is an action for discovery of assets of the estate of John H. English, deceased, pursuant to § 473.340, RSMo Supp.1984.

Decedent was survived by five children including Joe English, the eldest son, plaintiff below, and Roberta Stamper, a daughter, and Roger English, a son, defendants below. Roberta and Roger were personal representatives of decedent's estate. Plaintiff has appealed from a judgment rendered in favor of defendants.

A compendium of lengthy facts reveals that decedent passed away on March 28, 1983. Prior to his demise, and, more particularly, on May 19, 1978, decedent entered into a written contract with Roberta whereby she was to "provide a home" and "care" for decedent for "the remainder of his lifetime" in consideration of execution and delivery of a warranty deed by dece-

dent to Roberta conveying the former's residence in Auxvasse, Missouri. Decedent executed and delivered the warranty deed to Roberta simultaneously with execution of the contract by the respective parties. The real property mentioned was the subject of the action to discover assets of the estate of decedent.

Before entering into the contract, Roberta lived and worked in Kansas City, Missouri. Shortly after entering into the contract she quit her job, returned to Auxvasse, moved into the residential property deeded to her by her father, and devoted herself to his care and attended his needs. Roberta kept house for her father, paid for the food and prepared his meals, did his laundry, and chauffeured him to various places. She paid the taxes on the property, paid the utilities, and paid all expenses for running and maintaining the home. When the contract was entered into, the father was approximately 80 years of age and beset with the normal ravages of old age. As time went on his general health was on a downward spiral: he was unable to control his bowel movements and urinary system, he had to be assisted in and out of bed, was virtually non-ambulatory without the assistance of a "walker", and frequently fell.

On or about November 1, 1982, decedent was admitted to the hospital where his condition was diagnosed as "cancer of the prostate" and "cancer of the bone". His admission to the hospital was apparently precipitated by a downward spiral of his general health. On or about November 16, 1982, decedent was transferred from the hospital to a nursing home. There is no evidence in the record which suggests that Roberta instigated decedent's admission to the hospital or placement in a nursing home. Likewise, there is no evidence in the record which suggests that Roberta refused or was unwilling to care for her father in the home notwithstanding the deteriorating condition of his health, nor is there any evidence in the record which suggests that the quality of care Roberta rendered for her father attributed to his declining health. One of plaintiff's witnesses testified that as far as she could see Roberta had "provided a home" for her father and one of defendant's witnesses described the "home" as "well-kept".

Arrangements for placing decedent in a nursing home were made by his son Roger. Decedent had given Roger a "power of attorney" shortly after he entered into the contract with Roberta and deeded his residence to her. It is implicit throughout the record that the decision to secure professional care for the father in a nursing home or hospital was dictated by necessity in view of his deteriorating health, a decision made by a member or members of the family other than Roberta, and, moreover, a decision she neither urged nor participated in. There is nothing in the record which suggests that Roberta ever refused to care for her father in the home regardless of how burdensome doing so must have been. Decedent remained in the nursing home from November 16, 1982, until his death on March 28, 1983, except for a period of a week or ten days when he was again temporarily hospitalized.

From the time Roberta returned to Auxvasse to care for her father to and including November 1, 1982, when decedent first entered the nursing home, a period of approximately fifty-two (52) months, she never left her father's side except for one or two brief occasions. On the brief occasions mentioned, Roberta made arrangements for someone to stay with her father and paid them for their services from her own funds.

Roberta visited her father on a daily basis while he was a patient in the nursing home, and while there fed him and performed other services on his behalf.

During the course of the trial, defendant Roger English, over objection of plaintiff, testified that his father, at the time of entering into the contract with Roberta, stated that "he wanted her [Roberta] to take care of him as long as she could; 'but when I get where I'm not able to get up or down or in bed where you can't lift me or care for me in that manner,' that he said

I—he would go into a nursing home...." Plaintiff objected to the aforementioned testimony on the ground that it violated the "parol evidence rule."

The trial court rendered judgment in favor of defendants and against plaintiff and therein held, among other things, that Roberta "substantially performed all obligations required of her by the contract" and that she was "entitled to retain the real estate."

If correctly perceived by this court, plaintiff contends on appeal (1) that the trial court erred in rendering judgment against him and in favor of defendants because of failure of consideration, i.e. Roberta did not fully perform her part of the contract, and (2) that the trial court erred in admitting the objected to testimony of defendant Roger English because it varied the terms of the written contract in violation of the parol evidence rule.

█ The scope of appellate review in this court-tried case is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976): "[T]he decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law."

Plaintiff's first point pivots on whether Roberta's performance under the written contract constituted "substantial performance", or, as sometimes stated, "substantial compliance", and, if so, whether the doctrine of "substantial performance" or "substantial compliance" excuses complete performance of the contract for personal services by Roberta.

Roberta's father lived for fifty-seven (57) months after the controversial contract was entered into, fifty-two (52) months of which Roberta devotedly cared and provided for him in accordance with the terms of the contract, and five (5) months of which he spent in a nursing home or hospital. Quantitatively, Roberta took care of her father per the terms of the contract for approximately 93% of the remainder of his life, and approximately 5½% of the remainder of his life was spent in a nursing home and approximately 1½% was spent in a hospital. Although there was some testimony that decedent, a time or two, indicated a desire to "go home" while a patient at the nursing home, there is nothing in the record to indicate that his desire was ever communicated to Roberta.

In *Gundaker v. Templer*, 560 S.W.2d 306 (Mo.App.1977), cited by one of the parties, the doctrine of "substantial performance" or "substantial compliance" was discussed and applied. *Gundaker* involved an action on a contract for a real estate commission and is not directly in point due to the divergent nature of the respective contracts and attendant facts. Neither party has cited, and this court's independent research has failed to locate, any Missouri cases which apply the doctrine of "substantial performance" or "substantial compliance" to excuse complete performance under a contract for personal services comparable to the one in question. According to 17A C.J.S. Contracts § 508a., p. 814 (1963) citing *McConnell v. Fulmer*, 230 Ind. 576, 105 N.E.2d 817 (1952) and *Craig v. Beach*, 303 Ky. 516, 198 S.W.2d 220 (1946), "the rule requiring strict performance has been relaxed in favor of contracts ... to furnish a home for another." Although both *McConnell* and *Craig* applied the doctrine of "substantial performance" or "substantial compliance" under contracts analogous with the one at hand in favor of parties occupying the same status as Roberta, the facts are admittedly distinguishable in that in both cases recipients of the care contracted for voluntarily left the respective homes being provided for them. Frankly, there appears to be a dearth of authority on the precise question of whether "substantial performance" or "substantial compliance" excuses complete performance of a contract for personal services "to furnish a home for another" under facts similar to those in the case sub judice. *McConnell* and *Craig* are the closest cases in point found by this court.

■ Whether performance of a contract for personal services by one standing in the shoes of Roberta constitutes "substantial performance" or "substantial compliance" so as to excuse complete or full performance must be measured in light of the facts of each particular case. There is no "litmus test" or set formula for making this determination. 17A C.J.S. Contracts, § 508b. (1963), pp. 814–15. An analysis of *McConnell* and *Craig*, as well as cases recognizing applicability of the doctrine of "substantial performance" or "substantial compliance" under other types of contracts, points up certain relevant factors to be considered.[1] Appropriately summarized, ultimate determination of the applicability vel non of the doctrine of "substantial performance" or "substantial compliance" necessarily involves a balancing of various weighted factors on a case by case basis—whether compliance was substantial, in a quantitative sense, when compared with the benefits the other party contracted for; whether the extent of performance could be said to meet the requirements of a reasonable person under comparable circumstances; what a party to such an agreement parallel to Roberta relinquishes in order to perform; and indicia of a good faith effort to fully perform according to the terms of the contract. In the context of this case, Roberta faithfully cared for her father and attended his needs during the major portion of his remaining years; she did not instigate removal of her father to a nursing home or hospital during the remaining five months of his life; her brother Roger made the decision to move their father to a nursing home to secure more professional care due to his rapidly declining health; she quit her job and closed her home in Kansas City to return to Auxvasse to care for her father; she at no time refused to care for her father in the home or suggested or urged that he be admitted to a hospital or placed in a nursing home; she provided "a good home" for her father while he was with her, and con-

tinued to devote herself to his care and needs after he entered the nursing home; and she at no time subordinated the best interests of her father to her own convenience. A balancing of the weighted factors in this case overwhelmingly tips the scales in favor of Roberta. Suffice it to say, the record in this case, reviewed in accordance with *Murphy v. Carron*, supra, supports the "finding" of the trial court that Roberta "substantially performed all obligations required of her by the contract." Plaintiff's first point fails to afford any basis for relief.

■ The essence of plaintiff's second and final point appears to be that the complained of testimony of defendant Roger English varied the terms of the contract in violation of the parol evidence rule in that it excused performance by Roberta in the event her father was placed in a nursing home. Assuming, arguendo, that said testimony was erroneously admitted by the trial court in violation of the parol evidence rule, reversal is not mandated. The general rule in this state is that errors in the admission of evidence in court-tried cases rarely constitute reversible error. See: *Linders v. Linders*, 356 Mo. 852, 204 S.W.2d 229, 233 (1947); *In Interest of J.A.J.*, 652 S.W.2d 745, 749 (Mo.App.1983); *Mansell v. Mansell*, 583 S.W.2d 284, 287–88 (Mo.App.1979); and *Cantley v. American Surety Co. of New York*, 225 Mo.App. 1146, 38 S.W.2d 739, 742–43 (1931). More directly in point, "[e]ven though evidence is admitted improperly, when other competent evidence supports a judgment in a court-tried case such as this, or an equity case, harmless error results." *Pelligreen v. Century Furniture & Appliance Co.*, 524 S.W.2d 168, 170 (Mo.App.1975). See also *Nunn v. Nunn*, 644 S.W.2d 370, 373 (Mo. App.1982), and *Sanfilippo v. Sanfilippo*, 637 S.W.2d 77, 79 (Mo.App.1982). The judgment of the trial court in the instant case was posited on a finding of "substantial performance" of the contract by Rober-

---

1. See generally: *Gundaker v. Templer*, 560 S.W.2d 306 (Mo.App.1977); *Weed v. Idaho Copper Co.*, 51 Idaho 737, 10 P.2d 613 (1932); and *Michigan Crown Fender Co. v. Welch*, 211 Mich. 148, 178 N.W. 684 (1920).

ta, which was supported by other competent evidence, rather than on the basis of a variance of the terms of the contract predicated on the purportedly inadmissible testimony of defendant Roger English. ·Plaintiff's second and final point is rejected.

Judgment affirmed.

All concur.

