## Mallory et al. v. James et al.

(Decided Oct. 23, 1936.)

(As Modified on Denial of Rehearing Dec. 11, 1936.)

J. C. McKNIGHT for appellants.

V. A. BRADLEY and FRED LISANBY for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Reversing.

From a judgment dismissing their petition and refusing to quiet the title of Charles Mallory to a farm in Scott county, he and his wife have appealed.

Miss Emma C. Vallandingham was never married, and lived with and kept house for her older and unmarried brother, Henry A. Vallandingham, upon her farm in Scott county which he managed for her and from the tillage of which they got their living.

Many years ago they took, to live with them as one

of the family, ·a nephew of theirs, then but a boy, who ever since has lived and worked with them, there on the farm, and who is now the plaintiff Charles Mallory, and is a man up in the forties.

In 1930, Henry A. Vallandingham died, and after his death, and in the latter part of the year 1931, Miss Emma C. Vallandingham executed a deed to Charles Mallory by which she conveyed this farm to him. Charles Mallory brought the four deeds Miss Emma held for this farm to Mr. S. L. Penn, a neighbor and notary public, and left them with him and gave him instructions how the deed should be written. Mr. Penn testified he did not know just how to put in these four different descriptions, and he asked Mr. Luke K. Jones to write it for him, and thus it happened that this deed was written for Mr. Penn by Mr. Luke K. Jones, now the county clerk of Scott county, but who was then a deputy in that office. The next time Mr. Penn was in Georgetown he got the deed from Mr. Jones and on December 11, 1931, he drove out to Miss Emma's. Mr. Mallory was present. The deed was read over to Miss Emma, she stated it was just as she wanted it, and she acknowledged the deed before Mr. Penn. When the acknowledgment was completed Mr. Mallory picked up the pen, the ink, and the deed and laid them in a little dresser.

Mr. Jones testified that in a week or so after that Mr. Mallory brought the deed to him and asked him to put it away for him; he did so, and the deed remained there for five or six months; then Mr. Mallory came in and asked for it and he gave it to him, and he had not seen it since. Mr. Jones testified the deed was properly acknowledged before Mr. Penn, and the grantee named in it was Mr. Charles Mallory. Mr. Jones identified four deeds which are in this record and are copied into his deposition as the ones whose descriptions he copied when he wrote this deed.

Mr. Jones testified the consideration was $1 and love and affection, and that Miss Emma reserved a life estate in the property. Mr. Penn testified that as he recalls it the consideration was love and affection, and he does not remember whether Miss Emma reserved a life estate or not.

Miss Emma Vallandingham died intestate on December 14, 1934. Trouble evidently arose at once, for on March 5, 1935, Mr. and Mrs. Mallory began this suit in

equity against some 18 parties alleged to be the heirs of Miss Emma. He alleged that he was the owner of this property, in possession of it, that he had lost his deed, and that the defendants were setting up claim to it, and he asked to have his title quieted.

But two of these defendants answered and they denied that any deed was ever executed to Mallory by Miss Emma for $1 or any other consideration, and for counterclaim asserted that if any deed were ever made to Mallory that by mutual agreement between Mallory and Miss Emma the contract between them was canceled and the deed was destroyed, or, if not so, it should be canceled by the court for failure of consideration.

About all to which Mallory was permitted to testify was that he had heard the testimony of Mr. Penn and Mr. Jones about this deed; that he did not have this deed now, did not know where it was or whether or not it was in existence, which was perhaps all about which he was a competent witness.

Plaintiff averred in his petition that the "other valuable considerations" as testified to by Jones, the clerk who drafted the deed, consisted of his agreement to manage and operate the property as he had theretofore done and to stay with his vendor during her lifetime and care for her and her affairs as long as she lived. The witnesses who were introduced and testified for both parties without the slightest hesitation testified, in substance, that plaintiff was a mainstay of the bachelor brother and his maiden sister for the past 25 or more years, and that his loyalty in serving them continuously from the time he was taken into their household was almost without parallel, since he never balked in rendering any and all character of service to them, both in managing and cultivating the farm, as well as attending to the duties of the household, including both cooking and laundering. When he himself did not perform those tasks, he was ever ready to and did assist Miss Vallandingham to the fullest extent. Such services continued after the death of the brother with, perhaps, more tender care on his part than before the brother's death. After that event the duty to execute the requests of Miss Vallandingham in supplying the necessities of her farm and in delivering her checks in payment therefor, which had theretofore been mainly performed by the brother, was assumed and completely executed by

plaintiff, who never refused, so far as this record shows, to perform any and all tasks requested of him, nor did he ever dispute over any proposition with either of his benefactors. It is therefore futile to argue, as does counsel, that there was a failure of consideration. The contention of appellees in that respect is that they proved by the bankers for Miss Vallandingham that she issued checks for the household necessities and farm supplies and they intimate that it was the duty of plaintiff to make such payments, but which contention is so unsupported by the facts as to require no discussion. To look after and manage and care for the farm and its owner, which plaintiff had alleged was the "other valuable consideration," as proven by Mr. Jones, by no means required him to defray the expenses incident to such management and care on his part, and we are confident that no decision of any court can be found in support thereof.

Counsel for defendant cites and relies on the cases of Watson v. Gilliam, 252 Ky. 762, 68 S. W. (2d) 399, Elswick v. Elswick, 220 Ky. 723, 295 S. W. 1070, and others cited therein as establishing the proposition that where there is a contract (not a gift) based upon a consideration consisting of service (not the payment of money), the burden is on the grantee in a litigation attacking the deed to allege and prove full performance on his part, and which, under the facts stated in those opinions, is a thoroughly established principle of law; but all those cases involved charges of fraud and overreaching on the part of the grantee whereby the grantor was induced to execute a deed that he otherwise would not have done. No fraud or mental incapacity or undue influence is even hinted at, either in pleading or proof, in this case as a ground for attacking the involved deed. but if it were otherwise the proof, as we have said, clearly and unmistakably established most punctilious performance of the consideration as set out by plaintiff in his petition.

The court, therefore, erred in adjudging otherwise, and for which reason the judgment is reversed, with directions to set it aside and to render one sustaining the prayer of plaintiff's petition by quieting his title and adjudging that the defendants have no title or interest in the controverted tract of land, and for other proceedings if necessary not inconsistent with this opinion.