## Watson v. Gilliam et al.

(Decided Feb. 13, 1934.)

M. M. REDWINE for appellant.

JOHN T. REDWINE for appellees.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

In February, 1930, William Watson and his wife conveyed to his daughter, Lourenia Gilliam, and her husband, Francis Gilliam, a tract of land in Elliott county for the consideration that the grantees were to support and care for the grantors, Watsons, during their lives. Soon after the deed was made, Gilliam and his wife moved into the home with the Watsons where they remained a few months. In October, Watson and his wife went to Ohio to visit their daughter, and upon their return about November 1st, their daughter and her husband had left his home and moved back to their farm on Newcombe creek. Watson and his wife then went to the home of their daughter and husband on Newcombe creek and lived there a while with them.

John Watson, a son of William Watson, who had not lived in that community for some time, returned to the community and he and William Watson moved into the home which he had deeded to his daughter which she had left as above stated. Soon thereafter William Watson brought this suit to cancel the deed which he had made to the grantees, in which he alleged that they had breached their contract and failed to provide and care for him and his wife and to perform the consideration set out in the deed. Defendants filed their answer denying the allegations of the petition and pleaded performance of the contract and that they were yet willing and able to continue to comply therewith. William Watson testified, in substance, that the appellees moved into the house with him in April after the deed was executed in February preceding, and stayed until in October at which time he and his wife went to visit their daughter in Ohio, and on their return about the first of November, appellees had moved out of their property and had gone back to their farm on Newcombe creek. He followed them to the latter location for the purpose of living there with them. He testified that during the time he was with them they treated him very scornful and ill and never bought him any clothes or provided anything for him except his board. When his son John Watson returned to the community, he got John to move back to the old place with him and take care of him because he had no one else to care for him; that he had no money or other personal property except some household goods and chickens which appellees took and moved with them to their home on Newcombe creek. He further testified that while he was living with his daughter and her husband in the home he had deeded to them, they moved their daughter and son-in-law in the home with them and that they imposed upon him certain insults and improper treatment. But it is not shown that appellees knew of this or were responsible therefor. John Watson testified that when he returned to the community he found his father poorly clad and in a dirty, ragged condition; that his father asked him to move into the old home with him and take care of him; that he went to the store and bought clothes for his father and moved into his old home with him at his request and has been taking care of him since that time. Logan Watson, a nephew of William Watson, testified that some time after his uncle made the deed to appel-

lees, he came to his house very poorly dressed; that he had on overalls with holes in them and in his shirt sleeves; that he appeared to be scared or something wrong with him; that shortly after that time he heard the appellee Francis Gilliam say that the only thing he hated about it, his leaving, was that he did not get to give him a good whipping before he went. On cross-examination the witness further stated that appellant said he was afraid that Francis Gilliam and his son-in-law were going to kill him in order to get him out of the way; that Francis Gilliam further said that he was going to prove that William Watson was insane and send him to the asylum. A number of other witnesses testified that appellant was very poorly dressed in a dirty and ragged condition during the time he was living with the appellees. Landon Mason says he heard the appellee Gilliam say that he would not take care of and be bothered with William Watson for both forks of Newcombe Creek. This was after the Gilliams had moved from the Watson farm back to their farm on Newcombe creek.

The appellee Lourenia Gilliam testified that her father and mother deeded to her and her husband the land in question in consideration that they maintain and keep them during their lives, and that they had done what they agreed to do. At this time her mother was still living with her and her father was living with John Watson on the place that he had deeded to her and her husband; and she did not know why her father did not stay with them any longer, only that he just got dissatisfied. She said that they were good to him and had complied with their contract; that she had urged him to return to her house and live there with her and her mother. She admitted that while her father and mother were on their visit with their daughter in Ohio, they moved from the farm he had deeded to them and where he and her mother were living with them, and left no one in the house and it was vacant when they returned from their visit; that their home on Newcombe creek was about three miles from the Watson farm. They next introduced appellee Francis Gilliam and plaintiff objected to his testimony because his wife had theretofore testified in the case. This objection is well founded under section 606 of the Code of Civil Practice and his depositions are incompetent and cannot be considered. They next introduced D. E. Conley who testified that he

had been in a position to observe the treatment accorded William Watson and his wife by defendants and that they had been very kind and good to them. But it seems that he was testifying from what he had observed on occasional visits in their home. He said, however, that he did not know whether or not defendants had furnished William Watson food or clothing since they moved off of the Watson farm which occurred within a few months after the deed was made.

The case was submitted to the court upon the pleadings and proof above indicated, and, upon consideration, the court entered a judgment refusing to cancel the deed, but directed that the parties may take further proof to show the cost of keeping and maintaining appellant, William Watson. After taking some proof on this question, which was conflicting, the court adjudged that the appellees pay William Watson $25 a year, payable at the end of each year, and adjudged this to be a lien against the land, and from those orders and judgments this appeal is prosecuted.

Appellee insists that the judgment should be affirmed under the authority of Walker et al. v. Maddox, 162 Ky. 784, 173 S. W. 137. It appears that there are many facts in common between the case supra and the case at bar. However, the cases differ on one material fact. In the Walker-Maddox Case, supra, it was not shown that the grantor had any reasonable grounds for leaving the home of the grantee to whom he had deeded his land to care for him during his life. In the case at bar the evidence seems to be to the contrary. It will be noticed that much of the evidence of appellant, William Watson, and many other witnesses above referred to is uncontradicted. In fact, the only contradiction appearing in the record is that of the appellee Lourenia Gilliam, in which she states, rather conclusively, that they were kind to him and complied with the terms of their contract. Other testimony relating to the statements of appellee Francis Gilliam—that he was going to have the old man sent to the asylum to get rid of him; that he would not keep him and be bothered with him for both forks of Newcombe creek; and that the only thing he regretted about his leaving his home was that he wanted to give him a good whipping before he left—is wholly uncontradicted. Also the evidence relating to the condition of the old man's clothes was unexplained

and uncontradicted. In such transactions the law requires a reasonably strict and substantial compliance with the contract. A partial performance is not sufficient. Lane v. Lane, 106 Ky. 530, 50 S. W. 857, 21 Ky. Law Rep. 9; Jenkins, etc., v. Jenkins, 19 Ky. (3 T. B. Mon.) 327; Alvey v. Alvey, 97 S. W. 1106, 30 Ky. Law Rep. 234.

In view of the evidence as a whole it is our conclusion that it clearly and satisfactorily shows that appellees failed to furnish and care for appellant as they should have done and they thereby failed to comply with the terms of the deed, and that the finding of the chancellor is contrary to the weight and preponderance of the evidence. Having these views, it follows that the chancellor erred in failing to cancel and set aside the deed.

The judgment is reversed and remanded with directions to set aside the judgment and enter a judgment canceling and setting aside the deed.