RATCLIFF ET AL. *v.* RATCLIFF ET AL.

[No. 27,619.  Filed February 9, 1942.]

*Wallace & Wallace,* of Veedersburg, for appellants.

*Dice & Williams,* of Covington, and *Ringer & Ringer,* of Williamsport (*Clarence R. Martin,* of Indianapolis, of counsel), for appellees.

ROLL, J.—This is an appeal from the judgment of the Fountain Circuit Court appointing a receiver. The proceedings to appoint a receiver were ancillary to a suit brought by Miles A. Ratcliff to cancel and annul a warranty deed for certain real estate executed April 12, 1929, by appellee Miles A. Ratcliff, to appellant Harry G. Ratcliff, and to cancel and annul a warranty deed for the same real estate executed December 2, 1931, by Harry G. Ratcliff to his wife Nora Ratcliff, and to revest title to said real estate in appellee, and for an accounting of the rents and profits of said real estate since April 12, 1929.

The court appointed appellee Starkey, receiver, to collect the landlord's share of the rents and profits from the real estate involved pending a final determination of the suit to cancel and annul said deeds.

Appellant Nora Ratcliff and Harry G. Ratcliff are in possession of the real estate.

In appellee's petition for a receiver it is alleged that Miles A. Ratcliff was on April 12, 1929, the owner of four hundred eighty acres of real estate in Fountain County, Indiana, and that on that date he conveyed said real estate to his son, Harry G. Ratcliff, by warranty, with the agreement that said Harry G. Ratcliff should hold said lands in trust for the said Miles A. Ratcliff. The petition recites the various terms of the trust agreement, and the failure of the trustee to perform the same, and also sets out the various things done by Harry G. Ratcliff in violation of said agreement. According to the petition, appellee was to receive a landlord's share of the crops after so much thereof had been used to pay taxes, interest on mortgages, upkeep, etc., as was necessary for that purpose; that appellants had refused to account to appellee in any manner concerning the income from the farm; that Harry G. Ratcliff

in violation of the trust agreement conveyed said real estate to his wife, Nora Ratcliff; that mortgages have been executed by Harry and his wife on said land; that they have failed to pay the taxes and interest according to the agreement; that they had executed a five-year lease on said land to a coal mining company on a royalty basis, and that said company is now engaged in strip mining coal on said land, and that said company under the lease agreement is paying the taxes on said land and also Harry's personal property taxes, as well as the interest and principal installment on the mortgages as they become due, and the residue of the royalties is paid to Harry G. Ratcliff. It is alleged that appellee has requested a reconveyance of said land but Harry and Nora Ratcliff refuse to reconvey the same to appellee.

It is further alleged that on December 16, 1936, the said Harry G. Ratcliff and Nora Ratcliff executed a written statement, acknowledged before a notary public in which instrument appellants acknowledged the trust agreement, and their liability to account to appellee for the rents and profits. It is further alleged that the said Nora Ratcliff accepted the conveyance from her husband with full knowledge of all the facts concerning the trust agreement between appellee and her husband.

The petition alleges the insolvency of both appellants and asserts irreparable injury will result to him if a receiver is not appointed.

From the record it appears that before there was a hearing on the petition for the appointment of a receiver, appellants each filed an answer to appellee's complaint to set aside the deeds mentioned above, in which answer appellants allege and acknowledge that the said Miles A. Ratcliff executed the deed to Harry G. Ratcliff as trustee, and that Nora Ratcliff, when the

land was conveyed to her, had full knowledge of the trust and of said trust agreement. But appellant contends that the trust agreement was oral and that the conveyance was made to him for the purpose of hindering, delaying, and defrauding the creditors of Miles A. Ratcliff. In the answers filed by Harry and Nora Ratcliff, they attached to and made a part of their answer a written instrument called a "Statement of Fact" which was executed by them and above referred to. This "Statement of Fact," as far as is material to the question here presented, stated, that prior to April 12, 1929, Miles A. Ratcliff was the owner of the real estate here in question; that on April 12, 1929, one Alice Howell was threatening suit against Miles A. Ratcliff, and for the purpose of protecting himself against said suit, Miles A. Ratcliff executed a deed to all of said real estate to his said son Harry G. Ratcliff to hold in trust for the said Miles A. Ratcliff; that said Alice Howell did file said suit but no judgment was obtained by her; that at the time said deed was executed, it was the intention and purpose of both the grantor and grantee that Harry G. Ratcliff should hold said lands as trustee for Miles A. Ratcliff.

The statement then continues with the various duties of the trustee, and his agreement to account for the proceeds of the farm; that the trustee was to occupy the land and farm the same and to pay taxes, interest on mortgages, upkeep, etc.

After appellants filed their answers to the complaint as above set out, and before the hearing on the petition for the appointment of a receiver, appellee filed a second and third paragraph of complaint to set aside the deeds to Harry and Nora.

In the second paragraph of complaint in addition to

the facts hereto stated, appellee alleged that he was seventy-eight years of age; that he was the father of three children, namely: Warren, Harry and Hollis, as the fruits of his first marriage. Warren died in 1941. That his first wife died and thereafter he married Addie Howell. Some time after his marriage to Addie Howell, she separated from him and went to the town of Kingman and there lived with her sister, Alice M. Howell, in property owned by appellee; that appellee supplied all necessities of life for both his wife and her sister until the death of his second wife on January 24, 1929; that after appellee's second wife left and went to Kingman and after appellee deeded the farm to Harry, he (appellee) lived in the home with Harry and his wife as was provided in the trust agreement; that when Alice M. Howell threatened to bring suit for $5,000 against appellee for services rendered her sister Addie, appellee's second wife, Harry came to appellee and told him about the threatened suit and advised him to convey all his land to him in trust and advised him that that was the only way to prevent Alice M. Howell from getting all his property and farm; that Harry time and time again made such representations and insisted and demanded that he make conveyance of the land and also his farm implements and livestock to him in trust, and promised and insisted that he would reconvey all of said property to him at any time he desired. Appellee also alleged that he reposed great confidence in his son Harry, and that he believed and relied upon the representations, etc., and as a result of said advice, persuasion and demands and agreement, he did execute the deed whereby the title was conveyed to his son Harry.

In the third paragraph of complaint appellee sets out the facts above mentioned and in addition thereto

alleged that he executed the deed because of threats of personal injury, intimidation and undue influence.

The three paragraphs of complaint were verified by appellee.

Upon the hearing for the appointment of a receiver, appellee introduced in evidence the three verified paragraphs of complaint to set aside the deeds herein mentioned, also the statement of facts above referred to and also the verified application for the appointment of a receiver.

Appellants introduced in evidence the separate affidavits of Harry G. Ratcliff and Nora Ratcliff. In the affidavits of Harry G. Ratcliff he admitted the execution of the "Statement of Facts" instrument, and the trust agreement but he denied that he suggested that the farm and personal property be transferred to him in trust for the purpose of cheating, hindering and delaying the creditors of Miles A. Ratcliff. He stated that the suggestion came from his father; that it was his idea and he had nothing to do with it. He also denied that he urged or insisted upon the execution of the deed, or in any manner threatened, demanded or used physical violence against his father to secure a conveyance of the property to him.

Under the above facts the court appointed appellee Starkey receiver *pendente lite.*

Appellant contends that this cause should be reversed because the court overruled his motion to require appellee to separate his petition for a receiver into rhetorical paragraphs, numbered consecutively, as provided by Rule 1-2 of the Rules of the Supreme Court. The above rule, for separating a pleading into rhetorical paragraphs numbered consecutively, was adopted for the purpose of reducing the issues in the case to the real questions in dispute. It will be

observed that in this case the appellants filed no answer to the application. No further pleading was necessary. The petition was addressed to the court and notice was given to appellants that a receiver *pendente lite* was requested. Appellants were in no wise harmed by the overruling of his motion and under such circumstances the court will not reverse the judgment.

Appellant next contends that the facts stated in the application for a receiver were not sufficient, because it proceeds upon the theory of a parol trust in real estate, and that a trust in real estate cannot be created by parol, and that the written statement of facts shows that the alleged trust was a part of a transaction to hinder, delay and defraud the creditors of appellee.

If the facts should show what appellant contends, appellee would have no legal right to set aside the deeds and secure a reconveyance of the land. See § 56-601, Burns' 1933, § 14734, Baldwin's 1934; *Vance* v. *Grow* (1934), 206 Ind. 614, 190 N. E. 747; *Bellin* v. *Bloom* (1940), 217 Ind. 656, 28 N. E. (2d) 53.

However, if appellee is able to establish the facts alleged in the second or third paragraphs of complaint the opposite result would be reached. *Novak* v. *Nowak* (1940), 216 Ind. 673, 25 N. E. (2d) 993.

However, we are not called upon in this appeal to determine the ultimate rights of the parties to the action to set aside the deeds. That must first be tried out before the trial court. The question before us is limited to the one question: Did the court err in appointing a receiver *pendente lite?*

In *Mead* v. *Burk* (1901), 156 Ind. 577, 580, 60 N. E. 338, it was said:

"Of course the court by its order appointing a receiver *pendente lite* does not thereby determine

or attempt to determine any right or title of the litigants to the property in controversy, as the appointment is made for the benefit of all. The rule in ordinary practice is to appoint a receiver with the sole view of securing or preserving the property, and not to inquire into the merits of the principal action. *Bitting* v. *Ten Eyck,* 85 Ind. 357. But inasmuch as the granting of an application for a receiver under the facts in each case rests within the discretion of the trial court, the latter may, and properly so, if deemed necessary, take into consideration all the facts and circumstances in the case, and may thereby be influenced in its judgment by the existence of a reasonable probability that the plaintiff applying for a receiver will ultimately succeed in his suit upon the merits of the case. 3 Pomeroy Eq. §§ 1331, 1336; Beach on Rec. (Anderson's ed.), § 7."

It is true that the applicant, in all cases for a receiver, in order to prevail, must show among other things, that he has a present existing interest, or at least a probable right or interest in or to the property, funds or assets over which he seeks to have a receiver appointed. *Supreme Sitting of the Order of the Iron Hall* v. *Baker* (1892), 134 Ind. 293, 33 N. E. 1128; *State* v. *Union National Bank of Muncie, Indiana* (1896), 145 Ind. 537, 44 N. E. 585; *Mead* v. *Burk, supra.*

As we understand the law governing the appointment of a receiver pending the litigation, it is not necessary that the plaintiff establish his right to recover in the main action, but the court is justified in appointing a receiver if he shows a reasonable probability of ultimate success in his suit upon the merits.

Appellee alleged in his application and also in his complaint that appellants were insolvent, and in possession of the property in controversy. Such facts necessarily intensified the probability of loss to the com-

plainant, and will serve, at least to show that his remedy at law for any loss or injury that may be sustained would be inadequate.

Section 3-2601, Burns' 1933, cl. 7, § 1143, Baldwin's 1934, gives trial courts large discretionary power in the appointment of receivers *pendente lite*.

It must be kept in mind that the application for the appointment of a receiver *pendente lite* is not an independent action. It is but ancillary to the main action, and is not the ultimate purpose or object contemplated by the principal action.

The facts in this case certainly are sufficient to bring the case well within the rules found in *Sheridan Brick Works* v. *Marion Trust Co.* (1901), 157 Ind. 292, 61 N. E. 666; *Supreme Sitting of the Order of the Iron Hall* v. *Baker, supra; State* v. *Union National Bank of Muncie, Indiana, supra,* and *Mead* v. *Burk, supra.* We think the above cited cases are controlling and we think the trial court was well within its discretion in appointing a receiver pending the final determination of the rights of the parties in the main action.

Judgment affirmed.

NOTE.—Reported in 39 N. E. (2d) 435.