## McCONNELL *v.* FULMER.

[No. 28,840. Motion to Dismiss Appeal overruled February 21, 1952. Opinion on Merits filed May 16, 1952.]

578

*Garth B. Melson* and *Arthur T. Mayfield,* both of Indianapolis, for appellant.

*Frank W. Morton, Morton & Tumbove,* and *Noble Wible,* all of Indianapolis, for appellee.

## ON MOTION TO DISMISS APPEAL

JASPER, J.—Appellee has filed a motion to dismiss appellant's appeal. Appellant appealed, under §3-2603, Burns' 1946 Replacement, from the decision of the trial court appointing a receiver pendente lite for real estate of appellant.

Appellee, in her motion to dismiss, contends that appellant failed to file her transcript within the time provided by statute. Section 3-2603, Burns' 1946 Replacement, provides as follows:

> "In all cases hereafter commenced or now pending in any of the courts of this state, in which a receiver may be appointed or refused, the party aggrieved may, within ten [10] days thereafter, appeal from the decision of the court to the Supreme Court, without awaiting the final determination of such case; and in case where a receiver shall be or has been appointed, upon the appellant filing an appeal-bond with sufficient surety, in such sum as may have been required of such receiver, conditioned for the due prosecution of such appeal, and the payment of all costs or damages that may accrue to any officer or person by reason thereof, the authority of such receiver shall be suspended until the final determination of such appeal."

The order of the trial court appointing the receiver was made on September 24, 1951. The time for appeal would have expired on October 4, 1951. On October 3, 1951, an application was filed with this court requesting an extension of time for the filing of the transcript and assignment of errors, the request for extension being made under Rule 2-2 of this court, which provides as follows:

"In all appeals and reviews the assignment of errors and transcript of the record must be filed in the office of the Clerk of the Supreme Court within 90 days from the date of the judgment or the ruling on the motion for a new trial, unless the statute under which the appeal or review is taken fixes a shorter time, in which latter event the statute shall control. If within the time for filing the assignment of errors and transcript, as above provided, it is made to appear to the court to which an appeal or review is sought, notice having been given to the adverse parties, that notwithstanding due diligence on the part of the parties seeking an appeal or review, it has been and will be impossible to procure a bill of exceptions or transcript to permit the filing of the transcript within the time allowed, the court to which the appeal or review is sought may, in its discretion, grant a reasonable extension of time within which to file such transcript and assignment of errors. When the appellant is under legal disability at the time the judgment is rendered, he may file the transcript and assignment of errors within 90 days after the removal of the disability."

The notice of the application for the extension of time in which to file the transcript and the assignment of errors was given by the adverse party by service upon one of her attorneys. The petition contained grounds for the extension of time under the rule; and, as a part of the petition, the affidavit of the reporter of the trial court was attached, showing, among other

things, that she reported the hearing, and that it would be impossible to prepare the transcript within the ten days allowed for appeal. This court granted the extension of time to file the transcript and assignment of errors to and including October 25, 1951. They were filed within the time allowed.

Appellee asserts that this court had no right to extend the time in which to file the assignment of errors and transcript, and could not extend the time beyond the ten days allowed for appeal, as provided by §3-2603, Burns' 1946 Replacement. Rule 2-2 of this court states specifically "all appeals and reviews." It is clear and concise and covers all appeals, whether they be from final judgments or interlocutory orders, and therefore a statute fixing a shorter time than ninety days is within the rule, and, on proper showing, an extension of time can be granted. This court amended Rule 2-2 on the 17th day of June, 1943, effective on the 6th day of September, 1943, to read as above quoted. The rule covers any type of appeal or review. 1 Gavit *Ind. Pleading & Practice,* §53, p. 201. The time allowed for an appeal from an interlocutory order appointing a receiver is subject to Rule 2-2 of this court.

Appellee further contends that appellant failed to serve a copy of the application for extension of time to file the transcript and assignment of errors on her or her attorneys. Under the rules of this court, it was not necessary, as Rule 2-2 requires only the service of notice. Rule 2-13 does not apply to an application for extension of time to file a transcript and assignment of errors, although it would have been better practice to have served a copy upon appellee or her attorneys.

Appellee further contends that appellant failed to initiate her appeal by filing a praecipe with the clerk within ten days, basing her assertion upon the fact that the date of filing does not appear upon the praecipe. The praecipe is a part of the transcript, copied there by the clerk and certified as having been filed with him. The complete transcript was filed within the time allowed by this court. The clerk, in compliance with §2-3112, Burns' 1946 Replacement, made the praecipe a part of the record, and the transcript was prepared in accordance with the praecipe. The appeal is therefore not subject to a motion to dismiss for failure to show the date of filing of the praecipe. *Pittsburgh, etc., R. Co.* v. *Reed* (1905), 36 Ind. App. 67, 75 N. E. 50.

It was within the discretion of this court to grant the extension of time within which to file the assignment of errors and transcript, under Rule 2-2; and the date of filing of the praecipe with the county clerk would only be considered in determining whether an extension should be granted. At most, the date of filing of the praecipe with the clerk would only go to the question of due diligence on the part of appellant in obtaining a record. This court, having granted the extension of time to file the transcript and assignment of errors, in substance decided that due diligence had been used.

Appellee asserts that appellant has failed to comply with Rule 2-17 of this court. There should be manifest good faith on the part of the writers of briefs to comply with our rules. The rules are for the government of the bar of this state, and they should be read and meticulously complied with; otherwise appeals will be subject to dismissal. We feel that appellant's brief is understandable as to the questions

presented, and it is our desire to decide cases on their merits where we are able to ascertain the questions to be decided. *Gross Income Tax Div.* v. *Conkey Co.* (1950), 228 Ind. 343, 88 N. E. 2d 563.

After considering all of the contentions of appellee, we find that they are without merit.

The motion to dismiss is overruled.

NOTE.—Reported in 103 N. E. 2d 803.

## DECISION ON THE MERITS

DRAPER, J.—Appellee filed her complaint in three paragraphs, the first for cancellation and rescission of a deed alleged to have been procured from her by fraud and undue influence; the second for rescission for breach of conditions subsequent and to impress a constructive trust on real estate to prevent the consummation of a fraud; the third for the appointment of a receiver *pendente lite.*

The court appointed a receiver. This appeal is from the interlocutory order making said appointment.

The appellee is a widow eighty-four years of age. Since her husband's death in 1912 she has lived in the real estate in question with the appellant, a daughter of her deceased husband, who was seventeen years of age when the husband and father died. In March 1950 she deeded the property to the appellant. She was not represented by counsel, and she received no money for the deed, but it was her understanding that she was to have a home there as long as she lived, and it is admitted by everyone that such is the fact.[1]

---

[1] A written instrument signed by the appellant grants appellee "living quarters" in the home for life. The date of the execution of this instrument is disputed. It is admitted that the actual agreement was broader than the written statement.

The property consists of four apartments, three of which bring an aggregate rental of $130 per month. The appellant now occupies the other apartment, the appellee having left and moved in with friends. The property is worth about seven or eight thousand dollars.

The parties have lived together thirty-nine years. For many years the appellant's invalid husband, now deceased, lived with them and the appellee assisted in caring for him. The appellant worked during those years and paid the grocery bills. They all lived together as a family, the appellant and appellee each contributing whatever income they had from any source for the common up-keep of the home. After receiving the deed the appellant mortgaged the property for $3,000. The payments on the mortgage are $50 a month, but the appellant has been paying $60 a month. With the proceeds of the mortgage the appellant converted the property from three apartments to four, using the money obtained by the loan for that purpose and adding to that amount about $1,000 of her own money. She also paid delinquent taxes in the sum of $104.17. The taxes are now paid in full to date. The appellant keeps an itemized accurate account of all income and expenses of the house. The gross income from rentals since the deed was executed has been $2,154.04 and the expenses, including minor repairs and taxes, has been $2,116.48. The house has been kept in good repair. During the thirty years before the execution of the deed the appellant paid about $4,000 for repairs on the house. In 1920 she obtained a loan of $2,000 and remodeled the downstairs. No part of that money was repaid to her by the appellee.

The appellee testified that appellant kept after her to sign the deed. She did not remember what conversations she had with the appellant before signing the

deed, but did say the appellant wanted to control the property and collect the rents and the appellant has collected the rents.

On July 26, 1950, the appellee went to a Mrs. Habel's to live and remained there about four weeks, the appellant paying her expenses. It seems that she went there because she complained about the workmen smoking and the manner in which they were doing the work. She later went to the home of appellant's sister where she stayed about six weeks while the house was being repaired.

In January of 1951 she was injured by a fall. The appellant employed and paid a nurse who stayed with the appellee until May 4th. Shortly following her recovery the appellee lost the keys to the house. This brought on an argument and the appellee went to live with the Wibles, where she is now residing. She has keys to the property in question and goes there when she pleases. After she left she was asked to return home, but has refused to do so. The appellant has offered to pay the Wibles for room and board for the appellee, but Mr. Wible refused. The testimony of the nurse indicates that the appellee was well treated by the appellant and was provided with everything for her comfort and convenience.

The appellee thought there was undue intimacy between the appellant and a seventy year old workman. She mentioned no facts or circumstances supportive of such a belief. It was denied by the appellant. It appears that the appellant has used the word "damn" when she became very impatient with the appellee. The appellant's sister, who never lived with these parties, but with whom the appellee stayed about six weeks, presented to the appellee ouija board messages and other such nonsense, and this distressed the appel-

lee, who is the widow of a Baptist minister. The appellee and appellant would sometimes have arguments, then they would kiss and make up, and go along as before.

Subdivision 1, 3 and 7 of Burns' 1946 Replacement, §3-2601, upon which the appellee relies, are set out in the margin.[2] We are not now called upon to determine the ultimate rights of the parties. The question before us is whether the court erred in appointing a receiver *pendente lite.*

A receiver may be appointed to preserve the property involved, or the rents and profits thereof, during the pendency of a suit to set aside a fraudulent conveyance, or in the language of our statute, "to vacate a fraudulent purchase of property." But the power is one to be exercised cautiously, 37 C.J.S., Fraudulent Conveyances, §465, p. 1311; Tardy's Smith on Receivers, 2nd Ed., Vol. I., §214, p. 518. It is exercised only where the appointment is necessary to secure ample justice between the parties. *Sands* v. *Sands* (1938), 214 Ind. 87, 14 N. E. 2d 535; 75 C. J. S., Receivers, §3, p. 658.

In this case fraud and undue influence are asserted. The theory is advanced that the appellant secured the

---

[2] "A receiver may be appointed by the court, or the judge thereof in vacation, in the following cases:

"First. In an action by a vendor to vacate a fraudulent purchase of property, or by a creditor to subject any property or fund to his claim.

". . . .

"Third. In all actions when it is shown that the property, fund, or rents and profits in controversy is in danger of being lost, removed or materially injured.

". . . .

"Seventh. And in such other cases as may be provided by law; or where, in the discretion of the court, or the judge thereof in vacation, it may be necessary to secure ample justice to the parties."

deed on a promise of future care, but with no intention of fulfilling that commitment once the deed was obtained. Without intending to prejudge the merits of the controversy we must say that on the showing in the record before us the proof of that fact leaves much to be desired. It is also difficult to find in the evidence any refusal by the appellant to provide and maintain a home for appellee. The appellant has requested the appellee to return home and has also offered to pay her expenses in her present home. Basing our judgment solely on the record before us, we doubt the sufficiency of any showing of a reasonable probability of ultimate recovery. *Ratcliff* v. *Ratcliff* (1942), 219 Ind. 429, 39 N. E. 2d 435.

It cannot be discovered from the evidence whether the benefits the appellant has received by having the use of the property outweigh her contributions to its upkeep or whether she actually has an investment in the property. It would probably be difficult to determine the fact. However, the taxes are paid, the property has been kept in good repair, and it seems to be producing an adequate income. At least there is no contention that a receiver could improve it. Insolvency intensifies the probability of loss to a complainant in these cases and serves to show that the remedy at law would be inadequate, *Ratcliff* v. *Ratcliff*, *supra*, but there is no suggestion that the appellant is insolvent, improvident, or likely to waste or wrongfully dispose of the rents and profits of the property, of which she keeps an accurate account.

The parties have lived together for thirty-nine years, since appellant was a young girl, and their relationship, though marred by occasional arguments, seems to have been mutually satisfactory and advantageous, and so far as the evidence shows, never

before interrupted. While it is true that a home is something more than a roof over one's head, and a contract of this kind cannot be satisfied by merely furnishing shelter and substance, *Lindsay* v. *Glass* (1889), 119 Ind. 301, 21 N. E. 897, it is also true that the performance of these contracts does not require perfection, but a reasonably strict and substantial compliance is sufficient. *Watson* v. *Gilliam* (1934), 252 Ky. 762, 68 S. W. 2d 399.

On the whole record before us it seems to us that the facts do not justify the appointment of a receiver *pendente lite,* and the order is, therefore, reversed.

NOTE.—Reported in 105 N. E. 2d 817.