The YOUNGSTOWN SHEET & TUBE COMPANY, an Ohio corporation

v.

PATTERSON–EMERSON–COMSTOCK OF INDIANA, an Indiana corporation, et al.

Civ. No. 3159.

United States District Court
N. D. Indiana,
Hammond Division.

Nov. 27, 1963.

Lester F. Murphy, of Riley, Reed, Murphy & McAtee, East Chicago, Ind., for Youngstown Sheet & Tube Co., interpleading plaintiff.

Alfred W. Moellering, U. S. Atty., Joseph Eichorn, Asst. U. S. Atty., Hammond, Ind., Dennis Fox, Dept. of Internal Revenue Service, Indianapolis, Ind., for intervenor, United States.

Joseph Morrow, of Lawyer, Schroer & Eichorn, Hammond, Ind., for Northern Indiana Public Service Co.

Byron Bamber, Hammond, Ind., for DuBois Engineering Co.

Rubin & Rubin, Gary, Ind., for Milo Vale, trustee in bankruptcy for Patterson-Emerson-Comstock of Indiana, bankrupt.

John McDonagh, Hammond, Ind., for Eichleay Corp., Central Rent-A-Crane, Welders Supply Co.

Joseph Costanza, Gary, Ind., for Hyland Electrical Supply Co., Brock Tool Co., Cities Service Oil Co. and G & W Electrical Specialty Co.

Jay Charon, Gary, Ind., for Boardman-Hamilton Co.

BEAMER, District Judge.

This is an interpleader action originally filed August 20, 1961, under the Federal Interpleader Act, 28 U.S.C. §§ 1335, 1397, 2361 and Rule 22 of the Federal Rules of Civil Procedure.

The action was commenced by Youngstown Sheet and Tube Company when Patterson-Emerson-Comstock of Indiana, hereinafter referred to as P-E-C, was found in default of performance on a contract to construct certain additions to Youngstown's facilities located in Lake County, Indiana. Various materialmen and suppliers had filed claims with or attempted to file claims against Youngstown for the unpaid obligations of P-E-C. The United States had also filed tax liens on any property of P-E-C which Youngstown had in its possession.

The subject of the interpleader action is a fund in the amount of $76,561.21, representing a portion of the contract price with P-E-C which Youngstown withheld under a retainage clause in the contract specifying:

"* * * 90% for work performed during month, 10% upon completion and acceptance by us." (See Exhibit "A", p. 4, attached to original complaint.)

All claimants, including the United States and the Trustee in Bankruptcy of P-E-C, seek to satisfy their claims out of the fund.

After hearings were held on various motions, Youngstown was granted a discharge as the interpleading plaintiff in the first stage of the proceedings from liability to all claimants, except Hyland Electrical Supply Co., who is presently under a temporary restraining order from enforcing a mechanic's lien against the property of Youngstown. In excepting Hyland Electrical Supply Company, the Court held that no authority existed for a federal court to transfer a state created lien to an interpleaded fund (said lien being a right to relief independent of any proceeding against the fund), thereby discharging the owner of the property from any further liability to the mechanic lien holder unless the lien holder were guaranteed payment.

Subsequently (May 28, 1963), a motion for summary judgment filed by Hyland Electrical Supply Co. against the United States was granted, declaring Hyland's right to participate in the interpleaded fund prior to the tax claims of the United States.

In its memorandum declaring Hyland prior to the United States, the Court found that the policy overriding Indiana lien law intends to protect those who have contributed labor or material to the construction, improvement or repair of a building or other structure against nonpayment by either the principal contractor or the property owner. Due to this prevailing policy, the property owner seeks to prevent double liability (i. e., payment to the defaulting principal contractor in addition to subsequent payment to the subcontractor to extinguish a lien on the improved property) by the use of a "retainage" provision in the construction contract with the principal contractor.

The Court then reasoned that the fund retained is withheld from the principal contractor until completion of the contract, and payment to all subcontractors is as much a part of the contract as performance, relieving the owner of any possible or potential double liability under Indiana lien law. Therefore, the principal contractor, in this instance, P-E-C, does not become entitled to the retained portion of the contract until his creditors with claims or potential claims against the property owner, Youngstown, are satisfied. Consequently, title to the retained fund remains in the property owner for the benefit of said potential or actual claimants with lien rights.

■ Since the United States stands in the position of P-E-C when attempting to levy upon any property owned by P-E-C, and would have no greater right to the fund than P-E-C, tax liens would not attach to that portion of the fund necessary to satisfy Hyland or any other claimant with actual or potential lien rights against the fund or property of Youngstown. See Aquilino v. United States, 363 U.S. 509, 80 S.Ct. 1277, 4 L. Ed.2d 1365 (1960); United States v. Durham Lumber Co., 363 U.S. 522, 80 S.Ct. 1282, 4 L.Ed.2d 1371 (1960); Randall v. Colby, 190 F.Supp. 319 (N.D.Ia. 1961).

Having granted Youngstown a conditional discharge and declaring Hyland prior to the United States, the Court now moves to a determination of priority between other claimants to the fund on deposit with the Clerk of the Court. A hearing was held on June 27, 1963, at which time all claims were presented. Parties previously joined in the action, but failing to appear or prove their claims after due notice by the Court, were defaulted.

An examination of the claims reveals, basically, seven categories of claimants.

(1) Claimants who have filed Notices of Intention to file Mechanic's Liens and also seek reasonable attorney's fees pursuant to Burns Ind. Stat.Ann. § 43–702.

(a) Hyland Electrical Supply Co. —claim for $6,081.86, and attorneys fees of $3,000.00.

(b) DuBois Engineering and Manufacturing Co.—claim for $2,165.00, plus 6% interest from June 2, 1961, and attorneys fees of $500.00.

(2) Claimants who alleged they are holders of liens pursuant to Burns Ind.Stat.Ann. § 43–709.

(a) Eichleay Corporation—$9,719.65

(b) Central Rent-A-Crane—$2,432.00

(c) Welders Supply Co.—$4,461.36

(d) Brock Tool Co.—$3,864.89

(e) Cities Service Oil Co.—$1,261.96

(f) G & W Electrical Specialty— $6,045.63

(3) A Pennsylvania judgment creditor under a foreign writ of attachment, Boardman-Hamilton Co. of Pennsylvania—$25,603.55.

(4) Attorneys' fees for the Interpleading Plaintiff, Youngstown Sheet and Tube Co.—$4,900.00 in fees, and $107.30 for court costs.

(5) Tax claims of the United States, in excess of $300,000.00.

(6) Claim of the Trustee in Bankruptcy that the entire fund should be administered by the Bankruptcy Court.

(7) Claim of Northern Indiana Public Service Co., which purports to be nothing more than a general, unsecured creditor—$1,259.29.

## MECHANIC LIEN CLAIMANTS

■ The Court in its Order of May 28, 1963, concluded that Hyland Electrical Supply Co., with its Mechanic Lien security has a claim superior to the United States, and as further noted, prior to all unsecured claimants.

As for the other claimant who had filed a Notice of Intention to hold a Mechanic's Lien, DuBois Engineering and Manufacturing Company, unusual circumstances attend its position in this proceeding. A default judgment was entered against DuBois for failing to appear and answer the original interpleader complaint filed September 5, 1961. The default judgment, entered October 5, 1961, permanently restrained and enjoined DuBois from instituting foreclosure proceedings on the mechanic's lien against the property of Youngstown for which DuBois had rendered labor, services and materials. It was further ordered that Youngstown be discharged from any liability to DuBois.

However, on January 12, 1962, DuBois appeared and filed an answer to the Intervening Complaint of the United States, and also stated a claim against the fund deposited in the Clerk's registry. In the allegations of its claim, DuBois acknowledges that by reason of the default judgment rendered herein, it "has been precluded from enforcing its lien rights against the plaintiff Youngstown Sheet & Tube Company, * * * and by reason thereof (its) claim is against" the fund on deposit.

Undoubtedly, DuBois' default amounts to a waiver of its rights to proceed against the property of Youngstown on the Mechanic's Lien. But at the same time, such a waiver constitutes an election to proceed against the fund on deposit with the Court. The Court can not *extinguish* state created lien (though it may enjoin such action under 28 U.S.C. § 2361) since foreclosure of a lien is a remedy available to lien holders independent of an interpleader action. Consequently, DuBois' actions resulted in an acquiescence to a transfer of its lien rights and claim solely to the fund, and the Court finds that it still enjoys a secured status against the fund, sharing the same priority accorded Hyland Electrical Supply Company.

ALLEGED LIENHOLDERS UNDER
BURNS IND.STAT.ANN.
§ 43–709

Since Youngstown holds the fund for the benefit of unpaid claimants, the remaining creditors must have lien rights to prevail over the Government and Trustee, who derive their title, if any, from P-E-C, and its right to the fund once the secured creditors have been paid in accordance with Indiana lien law.

With respect to the suppliers who claim to have given notice to Youngstown Sheet and Tube Co. pursuant to Burns' Ind.Stat.Ann. § 43–709, the Court must conclude after thorough examination of the affidavits and exhibits on file that the notices were not sufficient in form under the statute to create a personal liability upon Youngstown for the fund which it held. The statute requires:

"Any subcontractor * * * may give to the owner * * * notice in writing particularly setting forth the amount of his claim and services rendered, for which his employer is indebted to him, and *that he holds the owner responsible for the same* * * *."

None of the suppliers in their correspondence with Youngstown stated that they intended to hold Youngstown personally liable for amounts owed by P-E-C. The reported cases on the statute suggest this is necessary and the statute certainly appears to require it. Crawford v. Crockett, 55 Ind. 220 (1876); O'Halloran v. Leachey, 39 Ind. 150 (1872); Gilman and Another v. Gard, 29 Ind. 291, (1868). The purported notices to Youngstown merely "seek assistance in collecting the account" (Eichleay Corporation's letter of May 3, 1961), inquire into the prospects of releasing the money held by Youngstown (Central Rent-A-Crane's letter of July 27, 1961), attempted to work out a payment plan by use of joint checks payable to P-E-C and the supplier (Welder's Supply and G & W Electrical Specialty Co.), or request the withholding of sufficient funds to offset P-E-C's indebtedness (Cities Service Oil Co.'s letter of October 31, 1961).

With regard to Brock Tool Co., which stated by letter of June 12, 1961, that:

"We wish to advise you that final waiver of lien will not be executed until payment is received,"

a mere notice of intention to hold a lien or refusal to execute a waiver is insufficient under § 43–709 to hold the property owner personally liable. Compare Crawford v. Crockett, 55 Ind. 220 (1876). At best, the letter of Brock Tool Co. expresses an intention on the part of the supplier to take measures under Burns Ind.Stat.Ann. § 43–702 and § 43–703, and acquire *a lien against Youngstown's property*. These statutes cannot be used

as a basis for holding the owner personally liable under § 43–709. Id.

Some of the suppliers claim Youngstown should be estopped from denying liability because they refrained from filing mechanics liens in exchange for Youngstown's promise to withhold funds for payment to the subcontractors. Therefore, conclude the claimants, the fund should be distributed to them on equitable principles.

■ The affidavits and exhibits on file show that Youngstown and various suppliers attempted to devise some scheme of payment, but arrangements were halted due to legal proceedings in this court and tax liens levied upon the fund by the Government. Nevertheless, any claim based upon the "equities of the case" due to reliance upon the conduct of Youngstown, and any attempt to hold Youngstown personally liable in this respect and apart from the Indiana mechanic lien laws should have been raised *prior* to Youngstown's discharge in the first stage of interpleader. Having been discharged from further liability to the suppliers, without objection, the Court is unable to find any basis upon which to award payment to unpaid general creditors out of either the fund on deposit or from Youngstown Sheet and Tube Co.

Therefore, the Court holds that Northern Indiana Public Service Co. (an admitted general creditor), Eichleay Corporation, Central Rent-A-Crane, Welders Supply Co., Brock Tool Co., Cities Service Oil Co., and G & W Electrical Specialty Co., are general unsecured creditors, and must look to the Trustee in Bankruptcy for satisfaction of their claims.

In the same position is Boardman-Hamilton Co., who holds a judgment against P–E–C, rendered March 21, 1962, in a Pennsylvania Court of Common Pleas, for overdue insurance premiums.

Boardman-Hamilton contends that the award of judgment relates back to the date of the writ of attachment. The Writ of Attachment was issued June 23, 1961. In support of this position, it cites Lehigh Coal and Navigation Co. v.

Skeele Coal Co., 28 Pa.D.R. 28 (1916), which holds that a judgment in a foreign attachment relates back to the lien secured by the service of the writ.

■ Without an unnecessary discussion of the effect of judgment liens and the doctrine of relation back, suffice to say that in the face of a federal tax lien, a judgment creditor must be prior in time in order to prevail. The federal tax liens involved herein were recorded in Lake County on June 2 and June 16, 1961, whereas the writ of attachment was served on Youngstown Sheet and Tube on June 23, 1961, and despite the Pennsylvania "relation back" doctrine, the attachment lien is characterized as inchoate because at the time the attachment was issued the fact and amount of the lien were contingent upon the outcome of the complaint in assumpsit filed in the Pennsylvania Court of Common Pleas. United States v. Acri, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264 (1955), is controlling and gives the Government priority, holding under similar circumstances that it is immaterial under state law that the attachment lien is treated as a lien perfected at the time of attachment.

Furthermore, as against the Trustee in Bankruptcy, the attachment and judgment lien of Boardman-Hamilton is null and void since the attachment was within four months of the petition in bankruptcy, (Filed July 29, 1961). Section 67, sub. a(1) of the Bankruptcy Act. Therefore, Boardman-Hamilton is relegated to the position of a general, unsecured creditor whose only remedy is pursuing the claim in the Bankruptcy Court.

## PRIORITY BETWEEN UNITED STATES AND TRUSTEE IN BANKRUPTCY

The question of priority between the United States and the Trustee in Bankruptcy will affect the right of the prevailing claimants to reasonable attorneys fees. Therefore, before discussing the right to attorneys fees, priority between tax liens and the Trustee must be resolved.

The Trustee contends the Government did not, by the levy of June 28, 1961, make a valid tax levy for taxes due and owing by virtue of a state court receivership proceeding which was instituted two days prior (June 26, 1961) to said levy. It is the Trustee's position that a state receivership proceeding, *once filed,* brings all assets of the alleged insolvent party within the jurisdiction and control of the state court. And since the Bankruptcy Court derives custodial rights to all assets from the state court receivership, the Government can not levy on property once a receivership and superseding bankruptcy action has commenced. (The Government has not challenged the Trustee's contention that the date of the Bankruptcy action relates back receivership.)

Therefore, the issue in determining the priority of the United States or the Trustee hinges upon whether the mere filing of an application for a receiver, or the actual appointment of a receiver brings the fund in question within the control and custody of the state court and ultimately the bankruptcy court. If the former (legal custody attaches upon the mere filing of an application for receiver), then the tax levies are invalid being subsequent in time to the superseding bankruptcy court's constructive possession. If the latter (legal custody of the fund attaches only when a receiver is appointed) the levies are valid because prior in time to the superseding bankruptcy action.

The trustee relies quite heavily upon two Treasury Regulations, as follows:

"(1) Treasury Regulation No. 301.6331—1. Bankruptcy or Receivership cases: During a bankruptcy proceeding or a receivership proceeding in either a federal or a state court, the assets of the taxpayer are in general under the control of the court in which such proceeding is pending. Taxes cannot be collected by levy upon assets in the custody of the court whether or not such custody is incident to a bankruptcy or proceeding * * *.

"(2) Treasury Regulation 301.-6871(a)—2. Collection of assessed taxes in bankruptcy and Receivership Proceedings. (a) During a proceeding under the Bankruptcy Act, 11 U.S.C. Ch. 1–14, or a receivership proceeding in either a Federal or State Court, generally the assets of the taxpayer are under control of the court in which such proceeding is pending, and the collection of taxes cannot be made by levying upon such assets * * *."

The Trustee argues that there is no requirement in either of the cited regulations that a Receiver be appointed in order for the court, where receivership proceedings are pending, to have control of the estate or assets of the taxpayer.

The Trustee then points out that a receivership is pending in the state court when the action is filed, and the appointment of a receiver is merely ancillary to the principal action. Hellebush v. Blake, 119 Ind. 349, 21 N.E. 976 (1889); State ex rel. Glamack v. Horn, 228 Ind. 567, 94 N.E.2d 483 (1950); Johann v. Johann, 232 Ind. 40, 111 N.E.2d 473 (1953); Maple v. McReynolds, 208 Ind. 338, 196 N.E. 3 (1935).

Therefore, concludes the Trustee, once the state court has jurisdiction by virtue of the receivership action (application for a receiver), all assets of the alleged insolvent party come within the custody and control of the state court. The result, contends the trustee, is that even though a receiver is not yet appointed, all creditors including the United States are precluded from individually pursuing their remedies against the estate.

It is the Government's position, that despite the petition for appointment of a receiver, any creditor would have the right to pursue his usual remedies against the debtor's assets until the receiver was actually appointed. Furthermore, argues the Government, the treasury regulations concerning levy on prop-

erty involved in a receivership recognize that levy may be made where assets are not in *legal custody* in a receivership case. Treasury Regulation 301.6871(a) —2.

I am of the opinion that ample authority exists to sustain the Government's position.

Concededly, jurisdiction in a court attaches the instant a complaint is filed. Nor is there any dispute that the appointment of a receiver in Indiana is in aid of the court's jurisdiction in a pending receivership. However, the Trustee has failed to distinguish "jurisdiction to act" in a receivership proceeding from "custody and control" (viz., custodia legis) of the property by a receiver, vesting him with equitable title.

The treasury regulations cited by the trustee state that taxes cannot be collected by levy on assets in the "custody and control" of a state court. The regulations do not, however, define "legal custody and control" or when the incidents of "custody and control" attach.

Though there are no reported cases squarely on point with the instant case, the Indiana cases indicate that where a receiver is not yet appointed, creditors are not foreclosed from pursuing their legal or equitable remedies. See Randall v. Wagner Glass Co., 47 Ind.App. 439, 94 N.E. 739 (1911), an action to foreclose a mechanic's lien despite a pending receivership proceeding, wherein the court refers to "the date of the appointment of a receiver" as dispositive of lien rights, and that the court thereby obtains absolute control of the property upon the appointment of a receiver.

The cases speak of property in *custodia legis* when *in the hands of the receiver*, Baker v. Metropolitan Life Ins. Co., 221 Ind. 411, 48 N.E.2d 173 (1943), at 48 N.E.2d 174, and not when the receivership complaint is filed. Further support for this proposition is found elsewhere:

> "When *property is taken over by a receiver* or trustee appointed by a court of equity for the purpose of administration and liquidation it is in *custodia legis, and so long as the officer of the court* continues to hold the equitable title to such property it remains in *custodia legis*, and under the control of the court, *for the possession of the officer or trustee is the possession of the court.*" Morthland v. Lincoln Nat. Life Ins. Co., 216 Ind. 689, 25 N.E.2d 325 (1940). (Emphasis supplied.)

See also: Kist v. Coughlin, 222 Ind. 639, 57 N.E.2d 199 (1944) mod. on other grounds, 222 Ind. 639, 57 N.E.2d 586 (1944), " * * * a receiver takes the res of the receivership estate *subject to all liens and equities,* and the rights of creditors are *fixed as of the time of the appointment.*" At 57 N.E.2d 205 (Emphasis supplied). Interstate Finance Corp. v. Dodson, 105 Ind.App. 513, 12 N.E.2d 989 (1938), "A receiver takes the res of the receivership estate *subject to all existing liens,* but the *rights of creditors remain as they were when the receiver was appointed.*" At 12 N.E. 2d 991.

Significantly then, the reported cases fix the rights of creditors as of the date of the receiver's appointment, and not the date that the petition for appointment of a receiver was filed (i. e., commencement of receivership proceedings.).

The choice of words employed in the above cases is noteworthy in view of the purpose of receivership. Receivership is an extraordinary and harsh remedy. Mead v. Burk, 156 Ind. 577, 60 N.E. 338 (1901). The power to appoint a receiver is based upon sound judicial discretion, and used only in a clear case of extreme necessity. Indianapolis Dairymen's Co-op v. Bottema, 226 Ind. 237, 79 N.E.2d 399 (1948). Consequently, an application for receivership will not be granted as a matter of right, and will be denied as a matter of discretion if inappropriate. Fagan v. Clark, 238 Ind. 22, 148 N.E.2d 407 (1958); Ratcliff v. Ratcliff, 219 Ind. 429, 39 N.E.2d 435 (1945). A receiver is appointed to preserve the property in controversy and prevent its loss or destruction. Indianapolis Dairy-

men's Co-op v. Bottema, supra. Furthermore, a receiver *takes the place* of the former managers and officers of the corporation, their functions being suspended *by his appointment * * **. Jefferson Park Realty Corp. v. Kelley, Glover & Vale, 105 Ind.App. 313, 12 N.E.2d 977 (1938).

It must follow then that until the receiver is appointed, no court officer has "custody and control" of the property since no duly appointed representative is supervising property designated by the court as subject to receivership. See Goshen Woolen Mills Co. v. City Nat. Bank, 150 Ind. 279, 49 N.E. 154 (1898); *the receiver reduces assets to possession.* How then can it be said that upon the mere application for a receiver (which may be denied) the court obtains legal custody of all assets when no receiver exists with the powers of administration or management and supervision. To say that the court obtains *custodia legis* of all assets upon application but before appointment of a receiver would place the property in a state of limbo, subject to lack of care, dissipation, and possible destruction, since the true owners would be prevented from continuing with its management.

This result would be clearly contrary to the policy of preservation which motivates receivership proceedings. It would also appear inconsistent with the Indiana cases holding that the right and interest of the receiver with respect to the property and effects which he is ordered to administer relate to, and become fixed as of, the date of his appointment. Kist v. Coughlin, supra; Interstate Finance Corporation v. Dodson, supra; or the receiver's right is subject to the same equities and liens as existed against the property in the hands of the debtor. Id.

 Therefore, since the United States levied on the property in the hands of Youngstown Sheet and Tube Co. to enforce the collection of taxes prior to the appointment of a receiver, the debt is reduced to the possession of the United States as to the residue remaining after payment to the secured creditors of P-E-C. Aquilino v. United States, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960); United States v. Durham Lumber Co., 363 U.S. 522, 80 S.Ct. 1282, 4 L. Ed.2d 1371 (1960). See also United States v. Eiland, 4 Cir., 223 F.2d 118 (1955), where tax levy reduces property to the constructive possession of the government. The receiver does not and can not acquire any greater or better title or interest than the debtor had in the property. Chalmers & Williams v. Surprise, 70 Ind.App. 646, 123 N.E. 841 (1919). Thus, the United States is declared prior to the Trustee in Bankruptcy precluding the trustee from recovery until all levies prior to the appointment of the receiver are satisfied.

### ATTORNEYS FEES FOR MECHANIC LIEN HOLDERS

Having determined priority between the Government and Trustee in Bankruptcy, the next question involves the right of the mechanic lien holders and the interpleading plaintiff to reasonable attorney's fees and costs. The question becomes acute when the fund to be assessed for fees is either totally or partially impressed with the federal tax lien.

With regard to the mechanic lien holders, the Government asserts, citing Burns Ind.Stat.Ann., § 43–707 (1952–Repl.), that a lien holder must first recover judgment by foreclosure before he is entitled to any attorneys' fees. § 43–707 states:

> "*Attorney's fees.*—In all suits brought for the enforcement of any lien under the provisions of this act (§§ 43–701—43–713), if the plaintiff or lienholder shall recover judgment in any sum, he shall also be entitled to recover reasonable attorney's fees, which shall be entered by the court trying the same, as a part of the judgment in said suit."

The mere possibility of attorney's fees, when judgment has not yet been recovered, argues the Government, can not be calculated, may never come into exist-

ence, and is totally unknown when the original mechanic's lien is filed. Furthermore, contends the Government, it would be clearly incongruous to hold that on June 28, 1961, when the United States served a notice of levy on the Youngstown Sheet & Tube Co., or April 14 and June 14, 1961, when the taxes were assessed, P-E-C of Indiana had no property rights in the withheld money unless it paid attorney's fees to its unpaid materialmen, which fees for the most part, had not even commenced to accrue.

In support of its position, the United States urges reliance upon United States v. Pioneer American Insurance Co., 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963). In Pioneer, two taxpayers in Arkansas assumed a mortgage obligating them to pay "a reasonable attorney's fee" in the event of a default and the placing of the note in the hands of an attorney for collection. Subsequently, a default occurred and the mortgagee brought suit to foreclose. The state court fixed attorney's fees at $1,250 and granted the mortgagee's claim for the attorney's fee priority over federal tax liens which were filed after the commencement of the foreclosure suit, but before the decree of foreclosure. The Supreme Court of Arkansas affirmed on the ground that the claim for an attorney's fee became choate before the United States filed its tax liens.

On certiorari, the United States Supreme Court reversed, holding that the federal tax liens were entitled to priority over the mortgagee's claim for an attorney's fee because the latter was inchoate when the federal tax liens were filed, inasmuch as (1) at that time the amount of the attorney's fee was uncertain and (2) there was no showing that the mortgagee had become obligated to pay and had paid any sum for legal services.

In opposition to the Government's forceful argument, the mechanic lien holders contend they should not be deprived of any substantive rights (i. e., recovery of debt and attorneys fees) to which they would have been entitled had

the interpleader action not been filed and they were permitted to pursue their remedies in the state court. (Citing Sanders v. Armour Fertilizer Works, 292 U.S. 190, 54 S.Ct. 677, 78 L.Ed. 1206 (1934); interpleaded claimants should not be deprived of rights accorded them under state law.) Hyland Electrical Co. stresses the point that the purpose of interpleader, though to protect the stakeholder, does not change the rights of claimants and should lead substantially to the same result attainable in a state court.

Hyland and DuBois attempt to distinguish the Pioneer case by arguing that in Pioneer the taxpayer had a *vested interest* and property right in the mortgaged premises to which the tax lien immediately attached. But, in the instant case, say Hyland and DuBois, P-E-C has no interest or property right in the fund until all secured claimants are paid in full including attorney's fees, and it appears there is a surplus or residue then remaining for the delinquent taxpayer which can be attached by the Government. Aquilino v. United States, supra; United States v. Durham Lumber Co., supra; Randall v. Colby, 190 F.Supp. 319 (N.D.Iowa 1961).

The Court takes cognizance of the Government's contention that it would be incongruous to hold that P-E-C has no property rights in the withheld money at the time tax assessments were made unless it paid attorneys fees to its unpaid materialmen, which fees for the most part, had not even commenced to accrue.

The Court also feels bound to follow the broad dictates of United States v. Pioneer American Insurance Co., 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed. 770 (1963), insofar as attorney's fees for the secured claimants are concerned.

■ Under Burns Ind.Stat.Ann. § 43–707, the right to attorney's fees, (as opposed to the right to payment for services and materials which becomes fixed when rendered), remains contingent until awarded as part of the judgment. No right to attorneys' fees exist merely be-

cause there is an outstanding debt due from the contractor. See generally as to severability of claim for services and materials from claim for attorneys' fees, Grant County Lumber Co. v. Marley, 100 Ind.App. 42, 192 N.E. 110 (1934).

■ The facts and language of the Pioneer case are too emphatic upon the superiority of intervening federal tax liens as against subsequently accruing attorneys fees. Therefore, the Court is constrained to deny fees to Hyland Electrical Supply Co. and DuBois Engineering and Manufacturing Company.

## CLAIM OF INTERPLEADING PLAINTIFF FOR ATTORNEYS FEES AND COSTS

The remaining question pertaining to attorneys fees involves the claim of the stakeholder, Youngstown Sheet and Tube Co. for its fees and costs in bringing this action.

Youngstown sets forth four issues in its memorandum:

"(1) Is a disinterested stakeholder in an interpleader action entitled to recover attorneys fees and costs incurred by it?

"(2) In an interpleader action to which the United States is a party and where one or more other party claimants have prevailed in their claims over the claim asserted by the United States, is the interpleading disinterested stakeholder entitled to its reasonable attorneys fees and costs?

"(3) What portions of the fund or what parties in an interpleader action where the United States is a party bear the expense of paying the disinterested stakeholder's reasonable attorneys fees and costs?

"(4) In an interpleader suit where the disinterested stakeholder is not discharged from all liability and dismissed as a party until the end of the second stage of the interpleader suit, ought its reasonable attorneys fees be cut off and computed at any date prior to final trial date?"

In opposing the claim for fees and costs, the United States asserts that fees and costs claimed by an interpleading plaintiff are inferior to the tax liens of the United States on the authority of United States v. R. F. Ball Construction Company, 355 U.S. 587, 78 S.Ct. 442, 2 L.Ed.2d 510 (1958), which in turn is controlled by United States v. Liverpool & London and Globe Insurance Co., 348 U.S. 215, 75 S.Ct. 247, 99 L.Ed. 268 (1957). (The Ball case is a one paragraph per curiam opinion affirming Liverpool.)

■ The Court does not question the general rule that attorneys fees and costs may be awarded a disinterested stakeholder, United States v. Henry's Bay View Inn, Inc., D.C., 191 F.Supp. 632 (1960). However, it appears from the cases that attorneys fees and costs are denied the interpleading plaintiff to the extent that they are payable out of *any part* of an interpleaded fund impressed with a federal tax lien or where the fund is insufficient to satisfy a federal tax lien. Ball and Liverpool, supra; Seaboard Surety Company v. United States, 306 F.2d 855 (1962 C.A.9th); Commercial Standard Insurance Company v. Campbell, 254 F.2d 432, 433 (1958 C.A. 5th); Ford Motor Co. v. Hackart Const. Co., D.C., 143 F.Supp. 216 (1956); United States v. Henry's Bay View Inn, Inc., supra.

Youngstown contends that the above rule does not necessarily preclude an indirect assessment, i. e., "by paying the fees and costs out of the fund before paying the claims of the prevailing parties thereto." A similar argument was urged in Seaboard Surety Company v. United States, supra, 306 F.2d at page 857, and rejected. (Contended that fund was "primarily subject to costs and expenses of proceeding".)

While the possibility exists that denial of fees and costs in the United States v. Liverpool case, supra, was based primarily upon a controlling Texas garnishment statute, it is believed that any latent ambiguity was removed by the "subsequent

*per curiam* decision in the later case of United States v. Ball Construction Co., supra. Narragansett Bay Gardens, Inc. v. Grant Const. Co., 176 F.Supp. 451, 455 (1959 D.C.R.I.). In Narragansett Bay Gardens, it is stated: (citing from Ford Motor Co. v. Hackart Construction Co., supra,)

"The determination of the Supreme Court on the facts of the Liverpool & London case that counsel fees could not be allowed is controlling here. It is not significant that the source of power used by the lower courts in that case to justify their allowance was a Texas rule while here it is inherent equity authority plaintiff asks this court to exercise. None of the three opinions in the Liverpool case questions the validity of the application of the Texas rule in the federal court. That rule was treated throughout that case as a competent source of power for the allowance of counsel fees in the ordinary case just as is the equity power of this court ordinarily a valid source of power to be utilized for that purpose. But in the Liverpool case and in this one these usual prerogatives of the court *must fall before the primacy of the federal tax lien.* A superior source of power forbids the allowance of counsel fees here. The Supreme Court held in Liverpool that property subject to a valid and paramount federal tax lien cannot be invaded even for the allowance of the counsel fees to an innocent stakeholder, and this court must obey that ruling." At page 455 of 176 F.Supp.

I am compelled to agree with the above authorities and hold that a "direct" or "indirect" assessment for the purposes of awarding attorneys fees and costs to a disinterested stakeholder out of any portion of the fund impressed with a federal tax lien would invade the paramount and exclusive nature of said liens.

In the alternative, Youngstown contends that as a matter of discretion, the Court may assess fees between the claimants, Globe Indemnity Co. v. Puget Sound Co., 2 Cir., 154 F.2d 249, 250 (1946), or assess, *pro rata*, fees and costs against the prevailing mechanic lien holders. United States v. Chapman, 281 F.2d 862 (1960 C.A.10th).

The Court in Chapman had the following to say:

"There appears to be no reported case involving a situation in which, as to part of the deposited fund, there is a right superior to the tax lien. Yet that is the situation in the instant case and it presents the question as to the right of the interpleader to recover from that portion of the fund not awarded to the United States. The inviolability of a federal tax lien does not inure to the benefit of the labor and material claimants here. While it may seem inequitable to charge one group of claimants to a deposited fund with the expense of the innocent stakeholder and not similarly charge another claimant, such is the position taken by the government. It is supported by decisions which we are bound to obey." At pp. 870–871 of 281 F.2d.

 In view of the nature of Indiana lien law, this Court feels that an award of attorneys fees and costs to be borne by either prevailing or losing claimants would be completely unwarranted. To assess, pro rata, attorneys fees and costs against the prevailing secured claimants would achieve a somewhat bizarre result. The stakeholder in the instant case, whether disinterested and innocent or not, was amenable to foreclosure against its property by the mechanic lien holders in the state court, in addition to attorneys fees for the lien holders. I am unable to agree with a result which permits the property owner to recover attorneys fees *against* a rightfully foreclosing claimant, and in effect penalize the materialmen for filing a mechanic's lien on property which he has incurred expense to improve, notwithstanding the

stakeholder's expense in bringing an interpleader action.

Though the parties have stipulated that Youngstown is a disinterested and innocent stakeholder *in the fund on deposit,* the Court can not overlook the fact that Youngstown, by bringing this action had a very definite interest in preventing attempted foreclosure against its property in the state courts. The result achieved in the Chapman case finds no support under the facts of this particular case.

As to a discretionary assessment against the losing claimants, (who filed claims in good faith), suffice to say that this Court has no desire to inequitably multiply the loss they have already sustained without ample and substantial authority, or evidence of bad faith in asserting their claims.

For the foregoing reasons, the Court holds that Youngstown Sheet and Tube Company is not entitled to recover attorneys fees and costs out of the deposited fund, nor from any of the claimants.

This memorandum shall serve as the Court's Findings of Fact and Conclusion of Law.

Judgment of priority entered in accordance with the Order of the Court.

ORDER

Comes now the Court, and after final hearing of claims against the fund deposited by Youngstown Sheet and Tube Company, an Ohio Corporation, in the amount of $76,561.21 with the Clerk of the Court in the above entitled action, makes the following finding of allowances and priorities:

1. That the Hyland Electrical Supply Company and DuBois Engineering and Manufacturing Corporation, an Indiana corporation, have valid claims and shall share the first priority.

 a. That Hyland Electrical Supply Company is awarded the sum of $6,081.86.

 b. That DuBois Engineering and Manufacturing Company is awarded the sum of $2,165.00.

2. That the United States of America has a valid claim in the amount of $326,023.68, and is awarded the second priority taking the balance of the fund in partial satisfaction of its claim.

3. That since the fund is exhausted by the first and second priorities, the Court makes no finding of priority between the remaining unpaid claimants.

The Court does further determine that because of the intervening tax liens of the United States all claims for costs, attorneys' fees, and all claims for interest are hereby denied.

Judgment entered accordingly.