367 F.2d 498
 Petition of OSKAR TIEDEMANN AND COMPANY, for Exoneration From or Limitation of Liability as Owners of the S.S. ELNA II.
Oskar Tiedemann and Company, Appellant in No. 15203.
United States of America, Appellant in No. 15293.
Mathiasen's Tanker Industries, Inc., Appellant in No. 15280.
 No. 15203.
 No. 15293.
 No. 15280.
 United States Court of Appeals Third Circuit.
 Argued May 26, 1966.
 Decided September 12, 1966.
 
 COPYRIGHT MATERIAL OMITTED Thomas E. Byrne, Jr., Krusen, Evans & Byrne, Philadelphia, Pa., for appellant Oskar Tiedemann & Co.
 Leavenworth Colby, Atty., Admiralty and Shipping Section, Civ. Div., Dept. of Justice, Washington, D. C. (John W. Douglas, Asst. Atty. Gen., Morton Hollander, Atty., Dept. of Justice, Washington, D. C., on the brief), for Mathiasen's Tanker Industries, Inc., and the United States.
 Abraham E. Freedman, Freedman, Borowsky & Lorry, Philadelphia, Pa. (Martin J. Vigderman, Philadelphia, Pa., on the brief), for claimants-appellees except David Black in all cases.
 William Warner, Symmers, Fish & Warner, New York City, for appellee David Black in Nos. 15,280 and 15,293.
 Before HASTIE and GANEY, Circuit Judges, and CLARY, District Judge.
 OPINION OF THE COURT
 HASTIE, Circuit Judge.
 
 
 1
 This litigation is the aftermath of a disastrous collision in the Delaware River between the cargo ship Elna II, owned by Oskar Tiedemann and Co., and the tanker Mission San Francisco, owned by the United States and operated for the government by Mathiasen's Tanker Industries a private corporation. As a result of the collision, the Elna II was badly damaged, while the government owned tanker exploded and sank. Many members of the two crews were killed or injured.
 
 
 2
 Petitions for exoneration or limitation of liability were filed in the District of Delaware by both of the shipowners, Tiedemann and the United States, as well as Mathiasen's Tanker Industries. All claims arising out of the collision were brought within this proceeding.
 
 
 3
 In the first stage of the litigation the court tried the claims to exoneration and limitation of liability, denied all claims to exoneration, and duly decided that Tiedemann was entitled to limitation of liability, but that the United States and Mathiasen were not. 179 F.Supp. 227. On appeal, this court affirmed these decisions. 289 F.2d 237.
 
 
 4
 A second stage of the litigation followed in the district court. This involved the determination of the maximum dollar amount of Tiedemann's liability under the statutory scheme of limitation of liability. 46 U.S.C. § 183. In due course the court entered an order, dated April 16, 1962 and entitled "Final Decree", fixing $195,500 as the total amount of Tiedemann's limited liability for death and personal injury claims and property loss. Of this sum the court allocated approximately $180,000 to death and personal injury claims. The decree also provided "that upon payment into the registry of this Court of the sums hereinbefore set out, the petitioner, Oskar Tiedemann & Company should, and shall hereafter, be exonerated from any and all further liability of any and every nature whatsoever by reason of the collision between the USNS Mission San Francisco and petitioner's vessel, Elna II, * * *." There was no appeal from this decree. Tiedemann paid the full sum thus determined into the registry of the court.
 
 
 5
 A third stage of litigation involved hearings and a report by a commissioner, and subsequent decision by the district court, on the many claims which arose out of the collision and had been filed in this proceeding. Having paid the full amount of its limited liability into the registry of the court, Tiedemann did not participate in the hearings before the commissioner, since it seemed clear that the limitation fund would be consumed by the numerous claims chargeable against it aggregating several times $200,000.
 
 
 6
 After the commissioner had completed hearings on all claims and had filed his report, and with the matter before the court for decision on these claims, Tiedemann was advised for the first time that some claimants were now contending that unlimited liability should be imposed upon it for the full amounts of certain claims. Tiedemann then re-entered the proceedings to oppose these contentions. However, in its final decree making individual awards the court entered personal judgments against Tiedemann, additional to its already determined limited liability, aggregating $166,000 on claims of members of the crew of Tiedemann's ship Elna II for maintenance and cure necessitated by injuries sustained in the collision.
 
 
 7
 On this appeal Tiedemann urges that the court erred in imposing on it these personal obligations for maintenance and cure in addition to its overall limited liability as theretofore satisfied by the payment of $195,500.
 
 
 8
 At the outset we must decide whether the contention that liability for maintenance and cure should not be subject to limitation was properly entertained since it was not raised until after limited liability had been decreed, the maximum amount thereof determined, and that sum paid into court.
 
 
 9
 Tiedemann's petition for limitation of liability was filed in the District Court for the District of Delaware on March 19, 1957. The district court promptly ordered a monition to issue requiring all persons "claiming damages, indemnity or loss" by reason of the collision to appear and prove their claims in this action.[1] The court also restrained the institution or prosecution of any other action, suit or libel "of any nature arising out of, consequent upon, or in connection with * * * [the] collision * * *."
 
 
 10
 The several members of the crew of the Elna who are parties to this appeal responded to the monition by filing their individual claims reciting personal injuries suffered as a result of the collision and claiming both damages for negligent injury and maintenance and cure for the resulting periods of disability. These claimants also contended that the District of Delaware was not a proper forum for the limitation proceeding. The district court ruled against this contention and, upon appeal, we affirmed that decision. 259 F.2d 605. It is noteworthy that, while thus availing themselves of the first opportunity to challenge the jurisdiction of the district court, the members of the Elna crew made no contention that their maintenance and cure claims could not lawfully be subjected to such limitation of liability as was the principal relief sought by Tiedemann in this proceeding. This omission takes on added significance in the light of the provision of General Admiralty Rule 53 that a claimant's answer shall "state the facts and circumstances by reason of which * * right to limitation should be denied". 334 U.S. 869.
 
 
 11
 Hearing on the merits of Tiedemann's claim to exoneration or limited liability followed. On April 14, 1960, the district court entered an interlocutory decree ordering, among other things, that "the petition of Oskar Tiedemann and Company * * * for limitation of liability be and is hereby granted". The claimant crew members did not appeal from this decree, but the United States did. This court affirmed the decision that Tiedemann was entitled to limitation of liability. 289 F.2d 237. Here again, no contention was made that the decreed limitation of Tiedemann's liability would not limit liability on maintenance and cure claims which had been filed in the limitation suit.
 
 
 12
 The district court next undertook, on Tiedemann's motion to determine the total amount of Tiedemann's liability. Tiedemann's motion for such a determination was supported by a listing of all claims, including those of the Elna crew, and the dollar amount of each. These figures were used by Tiedemann, and thereafter by the court, in determining the allocation of the total amount of shipowner's limited liability between property claims and claims based upon death or personal injury. The court's "Final Decree" of April 16, 1962 specified and allocated $195,500 as the full amount of Tiedemann's limited liability and provided that upon the payment of this sum into the registry of the court, Tiedemann should "be exonerated from any and all further liability of any and every nature whatsoever by reason of the collision".
 
 
 13
 This adjudication was clear and comprehensive. When the all embracing language of the decree is considered together with the fact that the maintenance and cure claims were before the court and were actually used as part of the basis of allocation of the total amount of limited liability among types of claims, the conclusion is unavoidable that in the 1962 decree, the court decided that Tiedemann was exonerated from any further liability on any of the claims in suit, including those for maintenance and cure.[2] This is not to say whether that decision was legally sound. The present point is merely that it was made.
 
 
 14
 We have pointed out that the parties to the litigation had repeated opportunities to urge that the limitation of Tiedemann's liability should not relieve it of further personal liability for maintenance and cure. Yet, they permitted the completion of litigation on the limitation phase of the case and the entry of a decree comprehensively relieving Tiedemann of further liability without making any such contention. It was not until two years later, after the amounts of the individual awards had been determined by a commissioner, that counsel for the claimant members of the Elna crew first urged the additional imposition of unlimited personal liability for maintenance and cure. Thereafter the United States took the same position.[3] For several reasons, we think this contention should not have been entertained at that late stage of litigation.
 
 
 15
 The imposition of unlimited liability for maintenance and cure in the decree now on appeal was inconsistent with and a pro tanto reversal of the court's earlier decrees, the first granting limitation of liability generally and the second deciding the dollar amount of Tiedemann's responsibility and discharging Tiedemann of further liability. The first decree was not entered in vacuo. The claims of the Elna crewmen for maintenance and cure were before the court and thus were by necessary implication among the claims comprehended by the district court's decision that Tiedemann was entitled to limitation and by our decision affirming that decree. Thus, technically, the ruling of the district court now on appeal is inconsistent not only with its own earlier decree but with the necessary implication of our decision as well.[4]
 
 
 16
 Moreover, the second decree of the district court determining the dollar amount of Tiedemann's liability and providing for its discharge from all further liability was a significant adjudication analogous to a decree completing the first stage of interpleader and discharging the plaintiff of any liability beyond the fund deposited with the court. After that stage of interpleader is completed it is too late to impose personal liability upon the plaintiff. Youngstown S. & T. Co. v. Patterson-Emerson-Comstock of Ind., N.D.Ind.1963, 227 F.Supp. 208.
 
 
 17
 Technicality aside, it also must be considered as a matter of fairness to the shipowner, that the decrees of the district court and the attendant failure of the maintenance and cure claimants or the United States to urge the exclusion of maintenance and cure from the decreed limitation of liability gave Tiedemann every assurance that its liability had been fully determined and that it had no further interest to protect by participation in the subsequent hearings upon individual claims. Accordingly, Tiedemann took no part in those hearings at which evidence was introduced concerning the extent of the damages suffered by individual claimants. Tiedemann might well have contested or rebutted this proof. Indeed, our attention is now directed to substantial points which were not raised before the commissioner concerning the competency of evidence introduced at those hearings and the determination of the periods for which maintenance was allowable. Thus, to hold Tiedemann personally liable after it had been led to refrain from contesting these claims seems unfair.
 
 
 18
 Finally, our decision is influenced by the consideration that no harm to the maintenance and cure claimants was to be anticipated and none would have resulted if the court had refused to consider the tardy contention that Tiedemann's liability on these claims was not restricted to the limitation fund. That fund was more than sufficient to pay all maintenance and cure awards in full. The United States was fully liable for all other damage suffered by these claimants. Indeed, it now appears that during the pendency of this appeal all claims other than those for maintenance and cure have been fully satisfied by the United States.
 
 
 19
 All of these factors considered, we conclude that the district court erred in reopening the matter of the liability of Tiedemann in 1964 for enlargement of that liability inconsistent with the 1962 limitation decree.
 
 
 20
 Next, we consider a contention of the United States[5] that in the consolidated decree from which this appeal has been taken the court erred in failing to make any provision for sharing of liability or for contribution between the United States and the Tiedemann limitation fund, with the result that the United States, having fully paid the awards, other than maintenance and cure, made to the several claimants who were entitled to relief against it and the Tiedemann fund, is left without any right over against the fund. It is not disputed that, pending this appeal, the United States has fully satisfied 46 of the 47 awards the court has made to innocent claimants while a controversy concerning the 47th, a claim of the estate of David Black, is one of the matters now before us. The United States proposes to pay that claim in full in whatever amount shall be found correct on appeal.
 
 
 21
 "Where two vessels collide due to the fault of both, it is established admirality doctrine that the mutual wrongdoers shall share equally * * * personal injury and property damage inflicted on innocent third parties". Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp., 1952, 342 U.S. 282, 284, 72 S.Ct. 277, 96 L.Ed. 318. In an earlier stage of this litigation, the district court held and this court agreed that the collision in suit was caused by the fault of both ships. We also noted, albeit with regret because of the notably lesser fault of the Elna, that the consequence of this ruling would be the equal division of damages, subject of course to the right of limitation granted to Tiedemann. 289 F.2d at 242. Therefore, the decree now on appeal is incomplete in that it does not make any provision for division of damages. And since the United States now has paid all but one of the death and personal injury claims in full, and will pay that remaining claim, the issue now takes the practical form of achieving proper contribution through partial reimbursement to the paying tortfeasor.
 
 
 22
 But for limitation of its liability Tiedemann would be obligated to reimburse the United States for half of the aggregate amount paid by the government to the injured innocent parties. The Ira M. Hedges, 1910, 218 U.S. 264, 31 S.Ct. 17, 54 L.Ed. 1039. However, in this proceeding Tiedemann's liability has been limited to the much smaller amount represented by the fund which has been deposited with the court. Thus, a proper division of damages can be achieved quite simply, after the United States shall have fully paid all awards to innocent claimants, by disbursing to it whatever may remain of the limitation fund after maintenance and cure awards are paid.
 
 
 23
 Finally, we have also considered whether the amounts of the maintenance and cure judgments are reviewable in the present posture of the litigation. This is a matter of interest to the United States since any reduction of the amounts payable from the Tiedemann fund to maintenance and cure claimants would increase the unobligated balance of the fund available for contribution to the United States. However, the United States has not challenged the amounts of these awards by exceptions to the commissioner's report or even on this appeal. On the other hand, Tiedemann has urged on this appeal that a number of maintenance awards covered periods during which there was no proper legal basis for such allowances. But this contention has been made only for the purpose of showing that it was unfair to impose unlimited liability upon Tiedemann on claims which it might successfully have contested had not its liability already been restricted to the limitation fund. Tiedemann asserts no further interest in that fund, none of which will be returned to Tiedemann, however it may be divided between the maintenance and cure claimants and the United States. In these circumstances, there is no appeal before us which calls for a review of the amounts of the maintenance and cure awards.
 
 
 24
 One other related point remains. The United States argues that the maintenance and cure awards should be reduced to the extent that they may duplicate judgments for damages which the United States has already paid to these claimants.[6] However, our examination of the record discloses no such duplication of awards. The awards designated as maintenance and cure included nothing for "cure" but consisted solely of maintenance at a standard rate of $6 or $8 per day for periods found by the court to be proper. In legal contemplation such an award is a substitute for the free shipboard lodging and meals a seaman would have received but for his incapacitating injury. We find nothing in the record to indicate that any such item entered into the calculation of any seaman's damage award against the United States. Accordingly, we find no basis for any modification of the maintenance and cure awards as partially duplicating the damages already paid by the United States.
 
 
 25
 On the appeal of Oskar Tiedemann and Company so much of the decree as imposes upon the appellant any liability to maintenance and cure claimants additional to the availability and commitment of the Elna limitation fund for the payment of such claims will be reversed, with costs to Tiedemann on this appeal. On the appeals of the United States and Mathiasen's Tanker Industries, Inc., the decree will be remanded for modification by the insertion of a provision for payment of all that shall remain of the limitation fund, after satisfaction of the maintenance and cure claims, to the United States upon proof that it has satisfied all of the awards made against it in the said decree. No costs are awarded to these appellants.
 
 
 
 Notes:
 
 
 [1]
 General Admiralty Rule 51 directs that a monition issue "against all persons asserting claims in respect to which the petition seeks limitation," 334 U.S. 864, 866
 
 
 [2]
 In a memorandum of law filed in October, 1964, concerning exceptions to the commissioner's report, the maintenance and cure claimants, while contending that their claims should be paid in full, also recognized that they were covered by the limitation fund
 
 
 [3]
 It is not surprising that earlier in the litigation, when the United States itself and its contract operator were seeking limitation of liability, the government made no contention that any maintenance claim of an injured seaman would be exempt from a limitation decree
 
 
 [4]
 We recognize that the technical inconsistency here was not an obvious disregard of an explicit appellate ruling such as was held to warrant mandamus in Butcher & Sherrerd v. Welsh, 3d Cir., 1953, 206 F.2d 259
 
 
 [5]
 Technically, Mathiasen also makes this contention, but nothing of substance turns upon that circumstance
 
 
 [6]
 It has long been established that "the right to maintenance, cure and wages, implied in law as a contractual obligation arising out of the nature of the employment, is independent of the right to indemnity or compensatory damages for an injury caused by negligence; and these two rights are consistent and cumulative". Pacific Steamship Co. v. Peterson, 1928, 278 U.S. 130, 138, 49 S.Ct. 75, 77, 73 L.Ed. 220. However, this is not to say that a seaman can receive double recovery for the same item of damages. Thus, in a compensatory action under either the Jones Act or the admiralty doctrine of unseaworthiness, both the cash value of room and board and medical expenses are provable under the heading of lost earnings. Gypsum Carrier, Inc. v. Handelsman, 9th Cir., 1962, 307 F. 2d 525. And when such items are claimed and a damage award is made after proof of cash value of room and board and medical expenses, the items should not be recovered again in otherwise proper maintenance and cure awards for the same period. McCarthy v. American Eastern Corp., 3d Cir., 1949, 175 F.2d 727; cf. Muise v. Abbott, 1st Cir., 1947, 160 F.2d 590; Smith v. Lykes Brothers-Ripley S.S. Co., 5th Cir., 1939, 105 F.2d 604